322 So.2d 123 (1975)
LOUISIANA STATE BAR ASSOCIATION
v.
Robert Douglas EDWARDS.
No. 54457.
Supreme Court of Louisiana.
November 3, 1975.
Rehearing Denied December 5, 1975.
*124 Louisiana State Bar Association, Committee on Professional Responsibility, A. Russell Roberts, Metairie, Chairman, Sam J. D'Amico, Baton Rouge, Wood Brown, III, New Orleans, Leonard Fuhrer, Alexandria, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, Henry A. Politz, Shreveport, John F. Pugh, Thibodaux, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, for petitioner.
Milton P. Masinter, Virgil M. Wheeler, Jr., New Orleans, for defendant-respondent.

DISCIPLINARY PROCEEDINGS
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Robert Douglas Edwards, a member of said association. The Committee's petition for disciplinary action is based upon respondent's final conviction resulting from a plea of nolo contendere to the crime of knowingly receiving and concealing a stolen vehicle in violation of the National Motor Vehicle Theft Act, 18 U. S.C.§ 2313.
On April 30, 1970, Robert Douglas Edwards was indicted in the United States District Court for the Eastern District of Louisiana, New Orleans Division, on three counts of violating the National Motor Vehicle Theft Act, 18 U.S.C. § 2313.[1] At arraignment, a plea of not guilty was entered. Thereafter on September 3, 1971, Edwards entered a plea of nolo contendere to count one of the indictment which charged:
That on or about the 29th day of December, 1969, in the Eastern District of Louisiana, New Orleans Division, Robert Douglas Edwards, willfully and feloniously received and concealed a stolen motor vehicle, that is, a 1970 Chevrolet Pickup Truck VIN KE 140S136389, which was moving in interstate commerce from Picayune, state of Mississippi, to New Orleans, state of Louisiana, knowing the said motor vehicle to have been stolen; all in violation of Title 18 of the United States Code, Section 2313.
Following conviction resulting from his plea of nolo contendere, a presentence investigation was ordered, and on October 13, 1971, respondent was sentenced to imprisonment for a period of three years.
After respondent's conviction had become final, the Committee on Professional Responsibility filed a petition in this court on February 19, 1974, seeking disciplinary action against respondent under the provisions of Article 15, section 8, paragraph (7) (a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association.[2] This petition followed a determination by the Committee that the crime of which respondent had been convicted was final and was a "serious crime" involving a felony reflecting upon his moral *125 fitness to practice law. Respondent filed an answer, together with exceptions of no cause or right of action, res judicata, prematurity and vagueness. After issue was joined by respondent's answer, a Commissioner was appointed by this court. Respondent's exceptions were overruled, and a hearing was conducted on March 3, 1975. At this hearing, respondent was afforded full and unrestricted opportunity to present any and all evidence of "mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted . . . ." In the formal report of the Commissioner to this court, it is stated that the Commissioner found the offense for which respondent was convicted to be a felony under federal law involving moral turpitude and serious enough to warrant disciplinary action by this court "to whatever extent it may deem appropriate." The Committee on Professional Responsibility filed its concurrence to the report of the Commissioner. Objection was filed by the respondent to the report of the Commissioner. The matter was then submitted to this court under our original jurisdiction[3] for a determination of the appropriate disciplinary action to be taken, if any.
Respondent first attacks the Committee's proceeding under Article 15, section 8 of the Articles of Incorporation of the Louisiana State Bar Association, as amended and effective September 1, 1971, for a crime committed prior to the adoption and effective date of said article. It is asserted that Article 15, section 8 makes a substantive change in the discipline and disbarment rules as compared to that which previously existed under Article 13, section 12[4] and furthermore Article 15 makes it mandatory that a minimum of five years must elapse following disbarment before the disbarred attorney may apply for reinstatement. Respondent contends that these substantive changes violate his rights under the federal and state constitutions. We find no merit to this contention. Clearly, Article 15, section 8, effective September 1, 1971, provides for the institution of disciplinary proceedings for the "conviction of a crime." It is the date of conviction for the crime that is controlling. See Louisiana State Bar Ass'n v. Ponder, 263 La. 743, 269 So.2d 228 (1972). Therefore, since respondent was adjudged *126 convicted of the offense of violating 18 U. S.C. § 2313 based upon his plea of nolo contendere on September 3, 1971, the Committee properly proceeded under Article 15, section 8, as amended and effective September 1, 1971. Therefore, the fact of "substantive change," if any, is of no moment.
Secondly, respondent argues that the Committee erred in failing to comply with the procedure set forth in paragraphs (1) through (6) of section 8 of Article 15[5] prior to the institution of disciplinary proceedings. Specifically, he contends that the Committee must first file a written report with this court prior to instituting disciplinary proceedings. In Ponder, supra, we held that if the conviction of respondent is final at the time the Committee files its petition for disciplinary action, Article 15, section 8(7) of the Articles of Incorporation of 1971 properly applies.
Hence, in view of respondent's final conviction at the time the proceedings were instituted, the Committee correctly proceeded under Article 15, section 8, paragraph (7) (a) through (d) without first being required to comply with paragraphs (1) through (6) of said section and article.
We likewise reject respondent's complaint that the failure of the Committee to institute disciplinary proceedings against other members of the Louisiana State Bar Association who have been convicted of crimes constitutes selective discrimination and violates respondent's constitutional rights. This assertion has no relevancy or materiality to the issues here presented and is thus without merit.
Respondent next urges that since he has been pardoned by the Governor of the State of Louisiana, his full civil rights have been restored thereby removing any *127 disability upon which a penalty may be imposed. A similar contention was rejected by this court in Ponder, in which we stated that "a pardon is not an absolute defense to disbarment . . . ."
Additionally, we reject respondent's contention that a plea of nolo contendere may not be used as a "conviction" in these proceedings. It is argued that the inclusion of the nolo contendere plea of Article 15 added a new dimension. First, as previously indicated, since respondent's conviction resulting from his nolo contendere plea occurred on September 3, 1971, he is governed by Article 15, as amended and effective September 1, 1971, which permits institution of disciplinary proceedings in section 8(1) "[u]pon learning that an attorney has been convicted of a crime, whether the conviction results from a plea of guilty or nolo contendere or a verdict after trial . . . ." Secondly, nolo contendere pleas formed the basis of disciplinary proceedings under former Article 13, section 12 in prior cases. Louisiana State Bar Ass'n v. Connolly, 201 La. 342, 9 So.2d 582 (1942); Louisiana State Bar Ass'n v. Connolly, 206 La. 883, 20 So.2d 168 (1944); Louisiana State Bar Ass'n v. Steiner, 204 La. 1073, 16 So.2d 843 (1944); Louisiana State Bar Ass'n v. Rayl, 208 La. 531, 23 So.2d 206 (1945).
Finally, respondent argues that he offered sufficient evidence of mitigating circumstances to warrant the conclusion that disciplinary action is unnecessary.
At the hearing before the Commissioner, respondent presented evidence that in December, 1969, he had an interest in a sporting goods store in New Orleans known as Roland's Sporting Goods, Inc. Respondent also had an interest in Hillcrest Subdivision located in Covington, Louisiana. The two trucks owned by the sporting goods company were in need of substantial repair or replacement. In late December, 1969, three men who were customers at Roland's mentioned to the manager that they were leaving town and inquired whether he knew of anyone interested in purchasing some used trucks. The men were introduced to respondent. Discussions followed. The vehicles had 1969 Alabama license plates and Road and Bridge receipts, which respondent originally believed to be certificates of title. Serial numbers on the Road and Bridge receipts were examined and checked against those listed on the vehicles. Respondent contacted a friend who was an officer with the Louisiana State Police and requested him to determine whether or not the vehicles had been reported stolen. None of the vehicles were reported stolen at that time. Admittedly, the check was limited to an inquiry at the auto theft bureau in Baton Rouge and did not include a check through the national computer system.
Several days later, on December 29, 1969, respondent drafted and entered into certain agreements with the alleged owners of the vehicles. The agreements provided for the lease of the vehicles with options to purchase. Respondent was to pay $100 per month per vehicle for four months. Said payments were to be applied against the purchase price if the options were exercised. Respondent took possession and paid $400 on the first vehicle (count one of the indictment) on December 29, 1969; three other vehicles were delivered before January 11, 1970. A fifth truck was delivered around February 10, 1970. At first, the original truck was personally used by respondent, two were used at Roland's, and the remaining two were used at the Hillcrest development in Covington. However, after delivery of the fifth truck, business began to decline and, accordingly, respondent requested that the alleged owners of the vehicles pick up the last four vehicles delivered. He decided to keep the original one for his personal use at Hillcrest. As a result, all vehicles ended up at Hillcrest around the middle of February, awaiting *128 pick-up by the alleged owners. No one appeared. Rather, all five vehicles were impounded by law enforcement authorities during the first week of March, 1970. During the period of time that the trucks were in possession of respondent, four of them were covered by insurance. The 1970 Chevrolet truck, Serial Number KE 140S136389 (count one of the indictment), was insured on December 29, 1969; three other vehicles were insured on January 12, 1970. The named insured was listed as Calco, Inc., a corporation wholly owned by respondent.
Respondent contends that he did not know the vehicles were stolen until after they had been impounded (March). The most damaging testimony against him on this issue was that of Gerald Satterlee, president of Roland's, who testified that he resigned from Roland's on February 27, 1970 and information about the trucks being stolen was known to him, as well as to respondent, in January prior to his resignation. After the report of the Commissioner had been filed in this court, respondent sought a rehearing to clarify the record and findings of the Commissioner. The motion was denied on June 19, 1975. Respondent attaches to his brief filed in this court an affidavit of Satterlee, executed on September 19, 1975, in which he states that, since reading the transcript of his testimony before the Commissioner, he has reviewed the matter at length in his mind and knows as a fact that he did not have knowledge that the trucks were or might be stolen until about two weeks after his resignation as president of Roland's on February 27, 1970 or in mid-March, 1970, and not in January as testified to by him at the hearing.
Respondent received a Bachelor of Science degree from Southeastern Louisiana University in Hammond and a Masters degree in biochemistry from Emory University. He was admitted to practice law in Louisiana after graduation from law school in 1959. He immediately engaged in the practice of law in Gretna, Louisiana, in partnership with a schoolmate, Charles Gaudin, until the latter was elected Judge of the Twenty-Fourth Judicial District Court in 1966. Respondent became an assistant district attorney in Jefferson Parish in 1969. He is married and the father of three children.
Respondent introduced the medical testimony of his treating physician showing that he was hospitalized during the early morning of April 30, 1970 (date of indictment) for a suspected heart attack. Major surgery was performed on May 15, 1970 which included a repair of a hiatus hernia. He remained in the hospital until the middle of July and was then confined to bed at home until the first week in September, 1970. Respondent continued to receive treatment for high blood pressure. In August, 1971, respondent was found to be suffering from pneumonia, elevated blood pressure, hypertension and was generally upset. Tranquilizers were prescribed by his physician. The wife of respondent has also been treated for an emotional state. The plea of nolo contendere was entered on September 3, 1971.
There was also testimony adduced at the hearing showing that respondent and his then counsel were not in agreement as to action to be followed in his defense. A letter was written to the Louisiana State Bar Association inquiring as to the implications of a nolo plea insofar as disciplinary action was concerned. No reply was received. Testimony was heard by the Commissioner indicating that respondent expected a suspended sentence and was surprised by the imposition of a three-year prison sentence. Judge Charles Gaudin testified as a character witness on respondent's behalf. It was stipulated that five other named judges from Jefferson Parish would have testified similarly on respondent's behalf. Also, several affidavits setting *129 forth respondent's good character were filed in the record.
After respondent's indictment on April 30, 1970, he resigned from the district attorney's office. Immediately after his conviction based on his nolo contendere plea and the imposition of sentence on October 13, 1971, respondent was suspended from the practice of law on October 27, 1971, by order of this court. This suspension remained in effect until the order was rescinded on March 1, 1973. Respondent began serving his prison sentence on November 15, 1971 and was released on October 16, 1972. Disbarment proceedings originally filed against respondent on November 10, 1971 were dismissed by the Louisiana State Bar Association without prejudice on May 29, 1973. The present proceedings were instituted on February 19, 1974. Respondent testified that he has had great difficulty supporting his family since the inception of this matter in 1970.
In conclusion, we agree with the findings of the Commissioner, concurred in by the Committee, that respondent has been convicted of a serious crime which reflects upon his moral fitness to practice law. After reviewing the evidence of mitigating circumstances as set forth above, we do not find that respondent should be disbarred. However, disciplinary action is certainly warranted. We consider suspension from the practice of law for a period of two years from the date of this decree as an appropriate penalty under the circumstances.

DECREE
For the reasons assigned, it is ordered, adjudged and decreed that Robert Douglas Edwards be suspended from the practice of law in Louisiana for a period of two years from the date of this decree. Respondent is to bear all costs of this proceeding.
NOTES
[1] 18 U.S.C. § 2313 deals with the sale or receipt of stolen vehicles and specifically provides:

Whoever receives, conceals, stores, barters, sells, or disposes of any motor vehicle or aircraft, moving as, or which is a part of, or which constitutes interstate or foreign commerce, knowing the same to have been stolen, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
[2] Article 15, section 8, paragraph (7) (a) through (d) of the Articles of Incorporation of the Louisiana State Bar Association provide:

(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.
[3] La.Const. art. 7, § 10 (1921); La.Const. art. 5, § 5(B) (1974).
[4] Former Article 13, section 12 of the Articles of Incorporation of the Louisiana State Bar Association provided:

Whenever any member of the bar shall be convicted of a felony and such conviction shall be final, the Committee may present to the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana. . . .
[5] Article 15, section 8, paragraphs (1) through (6) provide:

Section 8. Conviction of a Crime
The following rules shall be applicable when a respondent has been convicted of a crime, to-wit:
(1) Upon learning that an attorney has been convicted of a crime, whether the conviction results from a plea of guilty or nolo contendere or a verdict after trial, the Committee on Professional Responsibility may secure a certificate of such conviction from the applicable Clerk of Court.
If the conviction is obtained in a Court of another state or a Federal Court, the Committee upon learning of the conviction, shall obtain two (2) copies of a certificate of conviction from the proper Court, and shall retain one (1) copy and may forward the other copy to the Supreme Court.
(2) The Committee shall then make a determination whether or not the crime of which the attorney has been convicted constitutes a serious crime. The term `serious crime' means a felony or any other crime, the necessary element of which as determined by the statute defining such crime, reflects upon the attorney's moral fitness to practice law.
It will be necessary for the Committee in determining whether or not the crime constitutes a `serious crime,' to study the statute defining the crime, particularly if the crime involves the violation of a statute of the Federal Government or another state or jurisdiction.
(3) Upon completing its determination as to whether or not the crime constitutes a `serious crime,' the Committee shall file a written report with the Supreme Court, setting forth its findings and conclusions.
(4) If the Supreme Court should concur with the opinion of the Committee that the crime on which the attorney has been convicted constitutes a serious crime, the Supreme Court may suspend the respondent from the practice of law and order the Committee to institute the necessary disciplinary proceedings, provided however, that the disciplinary proceedings so instituted will not, unless requested by the accused, be brought to a hearing until all appeals from the conviction are concluded.
(5) If the Committee in its report to the Supreme Court has concluded that the crime of which the attorney has been convicted is not a serious crime, or if the Supreme Court should determine independently that the crime is not a serious crime, the Supreme Court will refer the matter back to the Committee.
(6) An attorney will be reinstated immediately on the reversal of his conviction for a serious crime that has resulted in his suspension, but the reinstatement will not terminate any disciplinary proceedings then pending against the attorney.