340 So.2d 264 (1976)
LOUISIANA STATE BAR ASSOCIATION
v.
Lloyd E. HENNIGAN.
No. 55436.
Supreme Court of Louisiana.
November 8, 1976.
Rehearing Denied December 10, 1976.
Alfred A. Mansour, Alexandria, Martin S. Sanders, Jr., Winnfield, for defendant-respondent.
Henry A. Politz, Shreveport, Chairman, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Leonard Fuhrer, Alexandria, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, for petitioner (plaintiff).

DISBARMENT PROCEEDING
SANDERS, Chief Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disbarment proceeding against Lloyd E. Hennigan, a member of the bar of this State. The Committee's petition relies upon the authority of Section 8 of Article 15 of the Articles of Incorporation of the Louisiana State Bar Association, effective September 1, 1971, and is based upon respondent's conviction in federal court for conspiracy to commit mail fraud in violation of 18 U.S.C. § 1341. This *265 Court has original jurisdiction over these proceedings as provided in Section 10 of Article 7 of the Louisiana Constitution of 1921.[1]
On April 3, 1967, the United States Eastern District Grand Jury indicted respondent, Lloyd E. Hennigan, for mail fraud and conspiracy to commit mail fraud, in violation of 18 U.S.C. §§ 371, 1341, respectively. On December 18, 1970, after a jury trial, Hennigan was found guilty of conspiracy to commit mail fraud. The court sentenced him to serve three years imprisonment. His sentence was later amended to three years active probation.
Respondent appealed his conviction and sentence to the Fifth Circuit of the United States Court of Appeals. That court affirmed his conviction and sentence. U. S. v. Perez, 489 F.2d 51 (1973). Respondent applied for a rehearing, which was denied.
Respondent then applied for a writ of certiorari to the United States Supreme Court. On June 10, 1974, the Supreme Court denied writs. Respondent's conviction became final twenty-five days thereafter, in accordance with Rule 58 of the Rules of the United States Supreme Court.
The Louisiana State Bar Association, acting pursuant to Section 8, paragraphs 7(a)-(d) of Article XV of the Louisiana State Bar Association, through the Committee on Professional Responsibility, filed a petition for appropriate disciplinary action with the Supreme Court of Louisiana on October 11, 1974.
In response to that petition, respondent filed various exceptions to the proceedings, which this Court ordered referred to the merits. Respondent then answered the petition by way of a general denial, affirmatively asserting, however, that he was innocent of the charges for which he stood convicted and giving notice that he intended to produce evidence of extenuating circumstances.[2] On October 29, 1975, a hearing was held before John V. Parker, the Commissioner appointed by this Court to conduct the proceedings. Louisiana State Bar Association Articles of Incorporation, Article 15 § 8(7)(b) (1971).
At the hearing, the Committee introduced into evidence the record of the instant proceedings, including the original petition for disciplinary action, certified copies of the certificate of conviction of the United States District Court for the Eastern District of Louisiana, and photostatic copies of the opinion of the United States Court of Appeal, Fifth Circuit in the case of United States v. Perez, supra. At this point, respondent requested the introduction of the entire transcript of evidence before the United States District Court and of all motions and pleadings filed in that court subsequent to the conviction. The Commissioner overruled respondent's motion to introduce in globo the additional material on the basis that under the Articles of Incorporation of the Louisiana State Bar Association, the Committee is only required to introduce the "certificate of the conviction of the respondent." Respondent objected to the Commissioner's ruling and proffered the evidence. The Commissioner, however, did rule that particular portions of the record referred to specifically by page and line number which respondent desired reviewed would be considered.
After the hearing on October 29, 1975, the Commissioner found that the crime, conspiracy to commit mail fraud, warranted cancellation of respondent's license to practice law.
The Louisiana State Bar Association then timely filed its concurrence in the Commissioner's *266 Report with this Court seeking respondent's disbarment.
Respondent contends that the disciplinary action pending against him is improperly instituted under Article 15, § 8 of the Louisiana State Bar Association Articles of Incorporation, which provides:
"(1) Upon learning that an attorney has been convicted of a crime, whether the conviction results from a plea of guilty or nolo contendere or a verdict after trial, the Committee on Professional Responsibility may secure a certificate of such conviction from the applicable Clerk of Court.
"If the conviction is obtained in a Court of another state or a Federal Court, the Committee upon learning of the conviction, shall obtain two (2) copies of a certificate of conviction from the proper Court, and shall retain one (1) copy and may forward the other copy to the Supreme Court.
"(2) The Committee shall then make a determination whether or not the crime of which the attorney has been convicted constitutes a serious crime. The term `serious crime' means a felony or any other crime, the necessary element of which as determined by the statute defining such crime, reflects upon the attorney's moral fitness to practice law.
"It will be necessary for the Committee in determining whether or not the crime constitutes a `serious crime,' to study the statute defining the crime, particularly if the crime involves the violation of a statute of the Federal Government or another state or jurisdiction.
"(3) Upon completing its determination as to whether or not the crime constitutes a `serious crime,' the Committee shall file a written report with the Supreme Court, setting forth its findings and conclusions.
"(4) If the Supreme Court should concur with the opinion of the Committee that the crime of which the attorney has been convicted constitutes a serious crime, the Supreme Court may suspend the respondent from the practice of law and order the Committee to institute the necessary disciplinary proceedings, provided however, that the disciplinary proceedings so instituted will not, unless requested by the accused, be brought to a hearing until all appeals from the conviction are concluded.
"(5) If the Committee in its report to the Supreme Court has concluded that the crime of which the attorney has been convicted is not a serious crime, or if the Supreme Court should determine independently that the crime is not a serious crime, the Supreme Court will refer the matter back to the Committee.
"(6) An attorney will be reinstated immediately on the reversal of his conviction for a serious crime that has resulted in his suspension, but the reinstatement will not terminate any disciplinary proceedings then pending against the attorney.
"(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
"(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
"(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
"(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
"(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.

*267 "(8) Except as provided hereinabove in this Section, the procedure with reference to proceedings based on a conviction of a crime, shall be conducted in the same manner as in ordinary proceedings."
Respondent argues that the instant proceeding should have been instituted pursuant to the Articles of Incorporation in effect at the time of the commission of the criminal act of which he was convicted. He argues that he was convicted of conspiracy to commit mail fraud which is charged to have transpired during 1965 and 1966 and that the Louisiana Bar Association could have instituted disciplinary action any time subsequent to April, 1967. Respondent maintains that because the discipline provided for in the Louisiana State Bar Association Articles of Incorporation now in effect are more harsh than those in effect prior to September 1, 1971, this proceeding is in contravention of the United States and Louisiana Constitutions ex post facto laws. Article 1, Sections 9 and 10 of the United States Constitution; Article 4, Section 15 of the Louisiana Constitution of 1921.
Prior to September 1, 1971, discipline and disbarment rules were embodied in Article 13, § 12 of the Louisiana State Bar Association Articles of Incorporation. The former rule provided in pertinent part:
"Whenever any member of the bar shall be convicted of a felony and such conviction shall be final, the Committee may present to the Supreme Court a certified or exemplified copy of the judgment of such conviction, and thereupon the court may, without further evidence, if in its opinion the case warrants such action, enter an order striking the name of the person so convicted from the roll of attorneys and cancelling his license to practice law in the State of Louisiana."
In Louisiana State Bar Association v. Edwards, La., 322 So.2d 123 (1975), the respondent attorney raised the same argument. He attacked the Committee's proceeding under Article 15, as amended and effective September 1, 1971, for a crime committed prior to the adoption and effective date of said article. We stated:
"Clearly, Article 15, section 8, effective September 1, 1971, provides for the institution of disciplinary proceedings for the `conviction of a crime.' It is the date of conviction for the crime that is controlling. See Louisiana State Bar Ass'n v. Ponder, 263 La. 743, 269 So.2d 228 (1972). Therefore, since respondent was adjudged convicted of the offense of violating 18 U.S.C. § 2313 based upon his plea of nolo contendere on September 3, 1971, the Committee properly proceeded under Article 15, section 8, as amended and effective September 1, 1971. Therefore, the fact of the `substantive change,' if any, is of no moment."
In Louisiana State Bar Association v. Ponder, 263 La. 743, 269 So.2d 228 (1972), in ruling upon an exception of prematurity, we stated:
"The current Articles of Incorporation of the Louisiana State Bar Association became effective on September 1, 1971. Because respondent's conviction became final after this date, the committee properly instituted this disciplinary action pursuant to Article 15, Section 8(7) of the Articles of Incorporation of 1971."
Although Edwards did not specify final conviction, the Court's reliance on Ponder, supra, which specifically applied the date of final conviction, supports the conclusion that the date of final judgment is determinative. This conclusion is further supported by 1 Wright, Federal Practice and Procedure, Section 175, which provides in pertinent part:
"The entry of a plea of guilty has the effect of admitting all material facts alleged in the charge. No further proof of the crime is required, though, as noted in the preceding section, no judgment may be entered on the plea unless the court is satisfied that there is a factual basis for the plea. The plea is not merely evidence *268 for the government. It is a formal criminal pleading, waiving a trial and defense, and leaving the court nothing to do but to impose sentence and enter judgment."
In Edwards, supra, the conviction was based on the respondent's plea of nolo contendere, equivalent to a guilty plea for most procedural purposes.
Hennigan's conviction became final twenty-five days after the United States Supreme Court denied writs. Rule 58 of the United States Supreme Court Rules; Cutrer v. Humble Oil & Refining Co., 228 F.Supp. 787 (E.D.La.1964), aff'd Stevens v. Humble Oil & Refining Co., 346 F.2d 43 (5th Cir. 1965), cert. denied 382 U.S. 978, 86 S.Ct. 546, 15 L.Ed.2d 468 (1966); See also Louisiana State Bar Association v. Ponder, supra; Louisiana State Bar Association v. Edwards, supra.
Thus we hold that, as Hennigan's conviction became final after the September 1, 1971 effective date, the disciplinary action is properly instituted under the provisions as set forth in the 1971 Articles of Incorporation.
The sole issue to be determined by this Court in a disciplinary proceeding based on a conviction of a crime is whether "the crime warrants discipline, and if so, the extent thereof." Louisiana State Bar Association Articles of Incorporation, Article 15 § 8(7)(d).
The basic facts surrounding respondent's conviction for conspiracy to commit mail fraud were set forth by the United States Court of Appeal, Fifth Circuit, in United States v. Perez, supra, as follows:
". . . The Louisiana-wide get-rich-quick scheme involved the staging of fraudulent automobile accidents for the purpose of creating false personal injury claims. These claims would be submitted to the insurance carriers for the respective vehicles involved in the wrecks with the aid and contrivance of certain physicians and lawyers.
"As the scheme evolved, the participants even coined their own terminology which, though alien to the uninitiated, became known to all those who participated. This glossary of modern day crookedness was quite descriptive. Certain participants were known as `recruiters.' The recruiter's function, not unnaturally, was to recruit others who assumed titles commensurate with their organizational function. There were the `hitters', whose function it was to drive the `hitter' vehicle in each collision which supposedly was to be liable for causing the accident. Then there was the "target" vehicles. The occupants of the `target' were known as the `driver' and the `riders'. It was determined at the outset that pregnant women made exceptionally good riders as they could claim pregnancy related injuries which would be both hard to disprove and easily settleable with the insurance carriers. Throughout the scheme there was an effort made on the part of the participants to use vehicles and drivers which were covered by high limits of liability insurance.
"According to a pre-arranged timetable, the `hitter' vehicle would strike the `target' vehicle either broadside or in the rear end. The occupants of the `target' vehiclethe driver and ridersand occasionally some of those in the "hitter" vehicle, feigning injuries, would be sent to a particular doctor and lawyer who would facilitate phony claims by creating a medical history for treatment of nonexistent injuries and making a demand on the appropriate insurance company.
"The key to immediate financial gain in each staged collision was advances paid by the attorneys to the `riders' for whom allegedly false claims were being submitted. These advances were paid in the form either of cash payments or loans from local financial institutions, co-signed by the attorney handling the claim. Of *269 the usual advance ranging from $250 to $500, part was retained by the rider-claimant with the rest being distributed among the organizers, recruiters, and others who assisted with various aspects of staging the wreck. When the claim was ultimately settled with the insurance carrier, the proceeds would be applied to (i) repay the advancing attorney or in such cases, to liquidate the guaranteed bank loan and (ii) to pay the inflated doctor's bill, not infrequently, with kickbacks going to both the organizers and the participating attorneys in addition to their usual shares.
"The feature of this case which brought it into federal court was that, in the course of asserting and negotiating for settlement the fraudulent claims of the voluntary victims, the United States mails were used." (footnotes omitted)
Under Article 15, Section 8(7)(d) of the Louisiana State Bar Association Articles of Incorporation, respondent was entitled to offer evidence at the Commissioner's hearing of "mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted." This means, of course, that he cannot offer in mitigation any evidence inconsistent with his guilt of the crime. Some of the evidence offered at the Commissioner's hearing was inconsistent with respondent's guilt. The Commissioner properly rejected this evidence. The disciplinary procedure is designed to avoid a retrial of the criminal charge, of which the respondent has been convicted under constitutional safeguards in a court of competent jurisdiction. The mitigating circumstances which respondent properly presented i. e., that since conviction he has led an exemplary life and that he has already suffered loss from the conviction do not detract from the fact that the crime relates directly to a flagrant abuse of respondent's skills as an attorney. We agree with the Commissioner's finding that respondent's conviction of conspiracy establishes that his conduct violates at least two provisions of the Code of Professional Responsibility:
Disciplinary Rule 1-102 provides in part:
"(A) A lawyer shall not:
* * * * * *
"(3) Engage in illegal conduct involving moral turpitude.
"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
"(5) Engage in conduct that is prejudicial to the administration of justice."
Disciplinary Rule 7-102 provides in part:
"(A) In his representation of a client, a lawyer shall not:
* * * * * *
"(4) Knowingly use perjured testimony or false evidence.
"(5) Knowingly make a false statement of law or fact.
"(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.
"(7) Counsel or assist his client in conduct that the lawyer knows to be illegal or fraudulent."
In conclusion, we agree with the Commissioner's report and find respondent has been convicted of a serious crime which reflects on his moral fitness to practice law and find that under the circumstances of this case disbarment is the appropriate disciplinary action.
For the reasons assigned, it is ordered, adjudged, and decreed that Lloyd E. Hennigan be and he is hereby disbarred from the practice of law in Louisiana and, accordingly, his license to practice is cancelled. Respondent is to bear all costs of this proceeding.
*270 TATE, J., recused, having served as a character witness in the federal proceedings.
DENNIS, J., dissents with reasons.
DENNIS, Justice (dissenting).
I respectfully dissent for the reasons assigned by me in Louisiana State Bar Association v. Philip J. Shaheen, Jr., 338 So.2d 1347 (La.1976), No. 55,432.
NOTES
[1] At the time the Louisiana State Bar Association filed this petition for disciplinary action on October 11, 1974, the Louisiana Constitution of 1921 was still in effect. The pertinent jurisdictional authority is now contained in Article 5, Section 5 of the Louisiana Constitution of 1974.
[2] Subsequent to the filing of the answer, a supplemental petition to the earlier filed exception of prematurity was filed, alleging that the matter was premature because a motion for a new trial was pending before the federal district court. The motion was denied, but apparently is presently being considered by the United States Court of Appeal, Fifth Circuit. Before this Court, respondent is contending that his conviction is not final.