343 So.2d 985 (1977)
LOUISIANA STATE BAR ASSOCIATION
v.
Ernest C. HAMILTON.
No. 55435.
Supreme Court of Louisiana.
February 28, 1977.
Rehearing Denied April 7, 1977.
*987 Henry A. Politz, Chairman, Shreveport, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Leonard Fuhrer, Alexandria, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, for Louisiana State Bar Assn., Committee on Professional Responsibility, petitioner.
Virgil M. Wheeler, Jr., Antonio E. Papale, Jr., New Orleans, for defendant-respondent.

DISCIPLINARY PROCEEDINGS
CALOGERO, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Ernest C. Hamilton, a member of the bar of this state. The Committee in its petition relies upon the authority of Article 15, section 8 of the Articles of Incorporation of the Louisiana State Bar Association, as effective September 1, 1971, and is based upon respondent's conviction in federal court for conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 371, 1341. This Court has original jurisdiction over these proceedings as provided in Article VII, section 10 of the Louisiana Constitution of 1921.[1]
On April 3, 1967, Ernest C. Hamilton, respondent herein, was indicted along with certain other persons by the grand jury for the United States District Court for the Eastern District of Louisiana for conspiracy to commit mail fraud.[2] On December 18, 1970, after a trial lasting almost two months, respondent and a number of his co-defendants were found guilty as charged. Respondent Hamilton was thereafter sentenced to serve three years in prison, which sentence was later amended to three years active probation. Respondent's conviction was upheld by the Fifth Circuit Court of Appeals. United States v. Perez, 489 F.2d 51 (5th Cir. 1974). His application for writ of certiorari was denied by the United States Supreme Court on June 10, 1974. 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).
On October 11, 1974, a petition for disciplinary action against respondent was filed with this Court. In response to that petition, respondent filed various exceptions to the proceedings, which this Court ordered referred to the merits. Respondent then answered the petition by way of a general denial, affirmatively asserting, however, that he was innocent of the charges for which he stood convicted and giving notice that he intended to produce evidence of mitigating circumstances. On December *988 11, 1975, a hearing was held before LeDoux R. Provosty, Jr., the Commissioner appointed by this Court to conduct the proceedings. Arts. of Incorp., La. State Bar Assn., art. 15, § 8(7)(b) (1971). At the hearing, the Committee on Professional Responsibility introduced into evidence the original petition for disciplinary action, the certificate of conviction of the United States District Court for the Eastern District of Louisiana, and a photostatic copy of the Fifth Circuit opinion in the case of United States v. Perez, supra.
At the hearing, respondent testified in his own behalf and presented three other witnesses: Daniel McGee and Mayo Perez, two of his clients in one of the automobile accidents which formed the basis of his conviction for conspiracy to commit mail fraud[3] as well as Mary Smith Hamilton, his wife. Respondent also proffered the transcripts of testimony of other co-defendants and other persons who had testified in previous committee disciplinary hearings, as well as the twenty-two volumes of trial transcript in the federal criminal proceedings. Likewise, he introduced into evidence, admitted subject to certain Commission objections, the following: his original office files in the two cases which formed the basis of his conviction, several letters of character reference, and certain documents relating to respondent's motion for a new trial in federal court. It is this evidence which constitutes the record in this proceeding.
The federal crime on which respondent's conviction was based involved a scheme wherein a group of lawyers, doctors, and laymen defrauded insurance companies by staging fake accidents and then collected insurance settlements on the basis of false and/or exaggerated injuries. Their use of the United States mails offered the basis on which they were convicted in federal court for violations of the mail fraud statute. The scheme is described more fully in United States v. Perez, supra. Respondent Hamilton was charged and convicted on the basis of his participation in two of the staged automobile accidents. See Footnote three. Several attorneys were involved in the overall scheme, three of whom have already been disbarred by this Court. Louisiana State Bar Ass'n v. Loridans, 338 So.2d 1338 (La.1976) [hereinafter Loridans]; Louisiana State Bar Ass'n v. Shaheen, 338 So.2d 1347 (La.1976); Louisiana State Bar Ass'n v. Hennigan, 340 So.2d 264 (La.1976).
In response to the Committee's petition for disbarment in this Court, respondent filed exceptions of no cause of action, no right of action, prematurity and vagueness; they were referred by this Court to the merits.
Respondent first argues that the petition fails to state a cause of action or a right of action because the provision under which the Committee proceeded, Article 15, section 8 of the Articles of Incorporation of the Louisiana State Bar Association, as amended, was effective September 1, 1971, and therefore could not apply to a crime committed prior to the adoption and effective date of the Article. He asserts that the application of this article to the crime he committed during the years 1965 and 1966 constituted a bill of attainder and an ex post facto law in violation of the state and federal constitutions.
The misconduct complained of by the Committee occurred during the years 1965 and 1966. At that time, a felony conviction was not, in itself, a ground for disbarment because it was the underlying misconduct, not merely the fact of criminal conviction for the misconduct, which gave grounds for a lawyer's disbarment. Louisiana State Bar Ass'n v. Connolly, 201 La. 342, 9 So.2d 582 (1942); Louisiana State Bar Ass'n v. Leche, 201 La. 293, 9 So.2d 566 (1942). Respondent therefore complains that our previous rulings on this subject in Louisiana State Bar Ass'n v. Edwards, 322 So.2d 123 *989 (La.1976) and Louisiana State Bar Ass'n v. Ponder, 263 La. 743, 269 So.2d 228 (1972) incorrectly set the date of conviction, rather than the date of the act of misconduct, as the pivotal date for rights and liabilities to attach under the Articles of Incorporation. We find no merit to this argument. It is the conviction of a crime which gives rise to these disciplinary proceedings. Thus, it is the date of that conviction which determines whether the Committee should proceed under the former articles or the current ones. Loridans, supra; Louisiana State Bar Ass'n v. Edwards, supra; Louisiana State Bar Ass'n v. Ponder, supra. Because respondent's conviction became final on June 10, 1974, the date on which the United States Supreme Court denied his application for writ of certiorari, his conviction became final well after the current Articles became effective in September of 1971, and the Committee properly proceeded thereunder.
Respondent secondly filed an exception of prematurity, contending that the Association has failed to comply with Article 15, section 8 of the Articles of Incorporation. He contends that this provision requires an initial determination by the Association that the crime involved constitutes a "serious crime," a finding that he says must be concurred in by this Court before disciplinary proceedings are instituted.
We have earlier dealt with this same contention in Loridans, supra. There, after more fully setting out the provisions of Article 15, section 8, we concluded that:
"Viewing the provisions of section 8 of article 15 in their entirety, it is clear that they call for an initial determination by the committee of the seriousness of the crime in the interim period after conviction but before finality of judgment by exhaustion of appeals. Such a preliminary determination allows for the suspension of an attorney during this time and thus affords better protection to the public and the courts. While the current Articles of Incorporation do provide for these preliminary steps, in the instant case we see no substantial violation of respondent's rights by the failure of the Committee to take them. If that procedure had been followed, respondent would possibly have been under suspension during the five to six year period between his conviction in federal court and the present determination by this Court with respect to respondent's disbarment. Instead he continued to practice law. Here the committee did not opt to proceed against respondent prior to the finality of his conviction. For whatever reasons they chose to wait, in our view their decision not to take any preliminary steps to discipline respondent does not give rise to any defense on his part to the initiation of the proceedings after his appeals have been exhausted and his conviction has become final." Loridans, supra, 338 So.2d at 1343.
The same reasoning applies to respondent Hamilton's exception of prematurity.
Respondent's final exception complains that the petition is so vague and indefinite as to fail to inform him of the nature and cause of the accusation brought against him in sufficient particularity so that he may prepare his defense thereto. The language he attacks is the petition allegation that "the crimes[4] of which respondent stands convicted have been determined by the Committee to be felonies and serious crimes and such as reflect upon the Respondent's moral fitness to practice law."
The petition sets out that respondent was found guilty by a jury on December 18, 1970, of violating 18 U.S.C. §§ 371, 1341 and specifies that this crime is conspiracy to commit mail fraud. The facts that the conviction was affirmed by the Fifth Circuit Court of Appeals and that the United States Supreme Court denied writs on his conviction are likewise included. Attached *990 and made part of the petition is a certified copy of the certificate of conviction as well as a photostat of the Fifth Circuit opinion which sets out in detail the dates, places, and participants in those accidents found to be fraudulent in which respondent was involved. Also, the three overt acts of which respondent was accused are specifically set out there, as well as details of the entire scheme.
There simply can be no doubt that this petition stated with sufficient particularity the serious nature of the crime of which respondent stood convicted. Although a petition for disbarment on the basis of a crime in some circumstances might be vague if it failed to particularize how the commission of the crime affected a petitioner's moral fitness to practice law, certainly here there is no such problem because the insurance fraud scheme itselfdescribed with particularity in the appellate opinionstrikes at the very heart of the legal profession: the use of his skills as a lawyer to fraudulently deprive insurance companies of money by means of fake claims is anathema to a profession the most significant attribute (indeed justification) of which is integrity and trust. See Louisiana State Bar Ass'n v. Shaheen, supra. For this reason, we find that the petition for disciplinary action filed against Ernest Hamilton does not, because of its vagueness, generality, or indefiniteness, fail to inform him sufficiently of the nature and cause of the accusation against him so that he might prepare his defense.
Having dealt with each of the exceptions filed by respondent and having found them meritless, we turn now to the exceptions he has filed to the report of the Commissioner. The first of these urges that the Commissioner erred in failing to grant his motion for a directed verdict dismissing the petition filed by the Committee.
At the hearing, the Committee introduced into evidence the petition for disciplinary action, which, as recited previously, had appended to it a copy of the certificate of conviction and a photostatic copy of the Fifth Circuit opinion. The respondent then moved for a directed verdict on the grounds that the Committee had failed to introduce any evidence that respondent had committed a "serious crime," as he alleges is made necessary under Article 15, section 8 of the Articles of Incorporation. Respondent claims that this failure obviated his having to introduce evidence regarding the serious or non-serious nature of the crime.
The "serious crime" language appears in subsection (1)-(6), section 8 of Article 15 which deals with suspension after conviction of a crime but prior to finality thereof. The language of Article 15 which relates to the disbarment stage of disciplinary proceedings, and correspondingly the matter presently before this Court, appears in subsection (7)(d) of Article 15"the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof." It is of course true that conviction of a crime no doubt would not warrant discipline, certainly significant disciplinary action, unless it were serious. Nonetheless the issue in this proceeding is simply whether the crime warrants discipline. This central issue in these proceedings we shall discuss hereinafter.
There is no merit to respondent's claim that, because no evidence was introduced by the Committee to show the crime was serious, he was improperly denied a directed verdict.[5]
*991 Next, respondent argues that the Commissioner erred in failing to admit the testimonial and documentary evidence proffered by respondent. We are not told exactly which evidence it is respondent complains about, but we note from the record of the hearing that there were many documents proffered but not allowed introduced into evidence including the entire twenty-two volumes of testimony in the federal court as well as other evidence as previously described. Some of this same evidence and similar evidence were proffered at the Committee hearings of the other lawyers involved in this same criminal action. In dealing with this issue, we have previously stated that:
"[A]rticle 15, section 8, paragraph 7(d) of the Articles of Incorporation of the Louisiana State Bar Association provides as follows:
'At the hearing based upon the respondent's conviction of a crime the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.' (Emphasis added)
"In addition, article 15, section 8, paragraph 7(c) states that `the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.' These provisions were clearly designed to put an end to an examination of respondent's guilt or innocence of the crime of which he has already been convicted and to permit only the introduction of mitigating circumstances that are not inconsistent with that guilt.
* * * * * *
"One of the essential elements of mail fraud as set forth in 18 U.S.C. § 1341, is a conscious, knowing intent to defraud. United States v. Payne, 474 F.2d 603 (9th Cir. 1973); United States v. Koenig, 388 F.Supp. 670 (S.D.N.Y.1974). In addition, one of the essential elements of the crime of conspiracy to violate a criminal law is knowledge and intent. See United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); United States v. Garafola, 471 F.2d 291 (6th Cir. 1972); United States v. Koenig, supra. As noted by the United States Court of Appeal, Fifth Circuit, in its opinion affirming respondent's conviction, United States v. Perez, supra, at 61, 62:
'A review of the record has convinced us that the evidence adduced, both direct and circumstantial was adequate to warrant the inference that all of the participants had entered into this concerted program. To conspire is to agreethe presence of an agreement is the primary requirement for the establishment of a conspiracy, the commission of an overt act in furtherance being attendant.
* * * * * *
'Here, there was direct, positive testimony, if credited, from which the jury could find that each of the defendants, appellants here, were participants in one overall conspiracy. With hardly any exception, the testimony squared with the common sense of the scheme.'
"To permit respondent to offer evidence at his hearing before the Committee on Professional Responsibility tending to show his lack of knowledge and/or intent would be to admit evidence `inconsistent with the essential elements of the crime for which he was convicted....' In direct conflict with the terms of article 15, section 8, paragraph 7(d) of the Articles of Incorporation of the Louisiana State Bar Association. We therefore conclude that the testimony [at issue] insofar as such testimony seeks to negate any knowledge or intent on the part of respondent, was inadmissible at the hearing and will be disregarded by this Court. To hold otherwise would require this Court to retry respondent despite *992 the fact that he was convicted after trial by jury, and despite the fact that his conviction was affirmed on appeal. It would also be in contravention of the specific language of the Articles of Incorporation that `the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.'
"The foregoing discussion is not intended to foreclose an inquiry into the facts surrounding the commission of the offense insofar as they reflect upon the character or quality of the criminal conduct or a respondent's degree of complicity therein. See Louisiana State Bar Association v. Edwards, 322 So.2d 123 (La. 1975). It merely indicates that the reference to `mitigating circumstances' does not relate to mitigating circumstances with respect to respondent's guilt or innocence of the crime, or with respect to the essential elements of that crime, but rather relates to mitigating circumstances which appropriately bear upon `whether the crime warrants discipline and, if so, the extent thereof.' Thus evidence of `mitigating circumstances not inconsistent with the essential elements of the crime' would include the character of the misconduct on which the conviction was based and, in appropriate cases, the degree of respondent's complicity, as well as evidence relative to the reputation of respondent, his post-conviction conduct, the regard in which he is held by members of the legal profession and the community in which he resides, family circumstances and the like." Loridans, supra, 338 So.2d at 1344.
Our holding there governs this case. While respondent may introduce evidence at the hearing which reflects upon the character or quality of the criminal conduct or on his degree, of complicity therein, he may not introduce or rely upon, for exculpatory purposes, evidence which relates only to his guilt or innocence of the crime, or to the essential elements of the crime. We have studied all of the evidence proffered at the hearing. Those materials which are merely exculpatory in nature and which go only to the guilt or innocence of respondent for the crime of which he was convicted we have disregarded because the determination as to his guilt is final and no further inquiry into that conviction may be made. Some of these materials also contain, however, evidence of the "character of the misconduct on which the conviction was based," as well as "the degree of respondent's complicity." Loridans, supra, at 1345. Since we have examined the evidence which was proffered, we find no prejudice to respondent in the Commissioner's complained-of failure to allow respondent to formally introduce those documents into evidence.
The Commissioner recommended to this Court that "respondent's crime bespeaks of his moral unfitness to practice law and calls for his disbarment as an appropriate disciplinary action." Respondent's final argument, and the one he fully briefs, is his contention that the evidence adduced at the hearing is insufficient to warrant disbarment.
In this regard, he argues initially that he in fact had no knowledge that the collisions in which he represented claimants were fraudulent. Such an argument is not appropriate in this disciplinary proceeding because knowledge is an essential element of the crime of conspiracy to commit mail fraud and respondent's final conviction for that crime precludes further inquiry into the question of Hamilton's knowledge, or lack of it, of the fraudulent nature of the collisions. Loridans, supra.
Respondent further argues, however, that this Court, in its determination of "whether the crime warrants discipline, and if so, the extent thereof," pursuant to Article 15, section 8(7)(d) of the Articles of Incorporation, should examine these facts: that he was charged with being involved in only one of the nine collisions;[6] that the overt acts he was charged with committing are wholly consistent with innocent representation of legitimate clients; that he withdrew from *993 the prosecution of the second fraudulent claim; and that he did not profit financially from his participation in this scheme.[7] Also, he introduced evidence that he is fifty-two years of age with two small children, a wife, and an aged mother almost totally dependent on him for support; that a disbarment would cause financial and emotional hardship to him and his family; that even after his indictment and conviction he was held local and national offices in the Veterans of Foreign Wars. Additionally, he states that his case is different from the disciplinary proceedings against attorneys Shaheen, Hennigan and Loridans because each of them was charged in at least one substantive count, while he was charged only in the conspiracy count and because, according to him, there was substantive proof of their knowing complicity in the scheme while there was only an inference adduced as to his own knowledge of the conspiracy.
Although most of the factors respondent urges us to consider are properly before us as mitigating circumstances, some of these factors, particularly the assertion as to proof of respondent's knowledge of the fraudulent aspect of these collisions, will not be considered by this Court because any inquiry into an essential element of the crime, such as knowledge, is foreclosed by the final conviction. When we weigh the mitigating factors against the gravity of the offense and its direct relationship to perversion of the attorney's integrity and professional responsibility, we conclude that the proper disciplinary action in this case is disbarment. As we have noted previously, see Louisiana State Bar Ass'n v. Shaheen, supra, the disbarment of an attorney is not so much for punishment of the attorney as it is for preservation of the integrity of the courts and the salutary effect it has upon other members of the bar. We are convinced that the participation of respondent in this illegal scheme far outweighs those factors he urges in mitigation, and we see no substantial difference between his participation in the scheme and that of the other attorneys involved. We therefore accept the recommendation of the Commissioner that under the circumstances of this case the appropriate disciplinary action is disbarment.
For the reasons assigned, it is ordered, adjudged and decreed that Ernest C. Hamilton be and hereby is disbarred from the practice of law in Louisiana on and after the date of this decree and that, accordingly, his license to practice law be cancelled. Respondent is to bear all costs of this proceeding.
TATE, J., is recused, having served as a character witness.
DENNIS, J., dissents for the reasons stated in LSBA v. Shaheen, 338 So.2d, 1347 (La.1976).

ON APPLICATION FOR REHEARING
PER CURIAM.
Rehearing denied. State v. Fourchy, 106 La. 743, 31 So. 325 (1901), relied on by defendant, is distinguishable from the case at bar.
TATE, J., recused.
DENNIS, J., is of the opinion a rehearing should be granted.
NOTES
[1] At the time the petition for disciplinary action was filed by the Louisiana State Bar Association on October 11, 1974, the 1921 Constitution was still in effect. The pertinent jurisdictional authority is now contained in Article V, section 5 of the Louisiana Constitution of 1974.
[2] Many of the participants were charged and convicted of substantive violations of the mail fraud statute, 18 U.S.C. § 371, as well as with conspiracy to commit mail fraud, 18 U.S.C. §§ 371, 1341. One of the other attorneys indicted, Lloyd Hennigan, was convicted only of the conspiracy count, although he was charged with both substantive and conspiracy counts. Respondent herein, however, was charged with and convicted of only the single conspiracy count.
[3] The government based its overall indictment on nine allegedly fraudulent automobile collisions. Respondent Hamilton represented participants in two of these accidents: McGee and Perez, who were involved in a November 3, 1966 accident in Bossier City, Louisiana, and Winfred Spell and Anne DeVille, who were involved in a March 10, 1965 accident in Pineville, Louisiana.
[4] The original petition and Commissioner's report mistakenly related that respondent had been convicted of two crimes, violations of the substantive law of mail fraud as well as conspiracy to commit mail fraud. The Committee has amended its report so as to correct this error.
[5] On the question of the serious nature of the crime, however, we deem it worth noting what the Commissioner had to say in this regard:

"That the crime of which Respondent stands convicted involves misconduct or moral turpitude, there can be no question. The participation by respondent in an activity described by Judge Brown as an `American tragedy . . ., the Louisiana-wide get-rich-quick scheme involving the staging of fraudulent automobile accidents for the purpose of creating false personal injury claims,' constitutes a most blatant breach of legal professional ethics. [United States v. Perez, supra.] Not only do we have an instance whereby an attorney has debased his profession by practicing same in a manner designed to fraudulently obtain funds from insurance companies, but one in which an attorney has attempted to make the courts an unwitting accomplice. Such conduct evidences a remarkable lack of regard not only for the law but for our constitutional system of justice. Participation by an officer of the court in such conduct simply cannot be tolerated."
[6] Actually, respondent was charged with being involved in two of the collisions. See note 3.
[7] In support of his contention that he did not profit from the scheme, he sets forth that what fee he earned in the first case was offset by advances he lost in connection with the second case.