195 So.2d 280

**LOUISIANA STATE BAR ASSOCIATION**

**v.**

**Harold E. POWELL.**

**No. 47508.**

Feb. 20, 1967.

Walter G. Arnette, Jennings, A. K. Goff, Jr., Ruston, Pat. W. Browne, Sr., New Orleans, A. ·Leon Hebert, Baton Rouge, James H. Drury, Thomas O. Collins, Jr., New Orleans, for petitioner.

R. Emmett Kerrigan, Ralph L. Kaskell, Jr., New Orleans, for respondent.

HAWTHORNE, Justice.

The Louisiana State Bar Association has filed a petition in this court seeking the disbarment of attorney Harold E. Powell. It is alleged that Powell was guilty of violation of the laws of the State of Louisiana of sufficient gravity to warrant his disbarment, and that he was guilty of willful violation of the rules of professional ethics and also guilty of unethical practices. The petition sets forth the specific acts of professional misconduct forming the basis of these allegations.

The Committee on Professional Ethics and Grievances .of the bar association in March, 1963, notified the respondent Powell that it proposed to conduct a formal hearing to determine whether he was guilty of willful violation of the rules of professional ethics so as to evidence a lack of moral fitness on his part to practice law, and this notice recited in detail specifi-

cations of charges and complaints that had been brought against him.

This notice was received by respondent in Natchez, Mississippi. In April he wrote the committee acknowledging receipt of its letter, but stating that he did not intend to make any appearance before the committee and that he had not engaged in the practice of law in Louisiana since December, 1961, and did not intend to do so in the future. He also stated that he had not paid 1962 and 1963 dues to the Louisiana State Bar Association and accordingly was not entitled to practice law under the rules of the association, and that for this reason he believed any action taken by the committee would be moot.

When this court was informed that Powell, who was living at Natchez, Mississippi, was a non-resident of Louisiana, the court upon the petition of the Committee on Professional Ethics and Grievances of the bar association appointed R. Emmett Kerrigan, attorney at law, to represent the absent accused in the proceedings to be held contradictorily against him. Mr. K .- rigan promptly wrote Powell of his appointment to represent him in these proceedings. Mr. Kerrigan again wrote Powell, requesting among other things details of any defenses which Powell might have. Mr. Kerrigan wrote the respondent a third time, giving the date set for the hearing, requesting any information that might be of assistance in defense of the charges

against him, and asking for the names of any witnesses who might testify in his behalf. All of these letters were sent by registered mail, and the record contains receipts signed by Powell showing that he received the letters He replied to none of them, however.

In due course a hearing was held on the charges or specifications, and following this hearing the committee concluded unanimously that Powell had been guilty of violations of the canons of professional ethics of sufficient gravity to warrant his disbarment. Accordingly the bar association filed in this court the petition for Powell's disbarment.

After issue was joined by the filing of answer by the attorney representing Powell, this court appointed Mr. Maurice J. Wilson, a member of the Baton Rouge Bar Association, who had been engaged in active practice for more than 10 years, as commissioner of the court to take evidence and report to the court his findings of fact and conclusions of law. The commissioner in due course held a hearing. He has filed in this court an excellent report, full and complete, in which he gives his findings of fact and conclusions of law and recommends that the name of Harold E. Powell be stricken from the roll of attorneys and that his license to practice law in Louisiana be cancelled.

The attorney representing the absent respondent excepted to the commissioner's report insofar as it made findings of fact and conclusions of law adverse to the respondent. Moreover, the attorney asserts that the commissioner erred in not dismissing or staying these proceedings, that the commissioner failed to give weight to certain specified evidence brought out at the hearing, and finally that the commissioner failed to follow a pronouncement of this court that "disbarment should never be decreed, if any discipline less severe would accomplish the desired result".

We think that the record fully supports the commissioner's findings of fact, and that he gave full consideration and proper weight to all the evidence adduced. We summarize the facts from the record as follows:

(A) In November and December of 1961 the respondent was acting as attorney and notary in connection with closing two loans for a lending institution in Baton Rouge which he had represented in similar matters before. Each transaction involved a sale of real estate, and the property in each case was covered by a mortgage which was to be paid from funds advanced by the lending agency. In each instance a check made payable to the joint order of the buyer and the respondent for an amount more than adequate to pay the mortgage was given to the respondent at the time the loan was completed, and in each case the check was endorsed by the

borrower and retained by the respondent. As is customary in such cases, it was the duty of the attorney handling the transaction to record the acts of sale and mortgage, pay and cancel the prior mortgage, and give to the lending agency the note signed by the borrower. In both cases Powell failed to pay the existing mortgage with the funds furnished by the lending agency, and the record does not disclose what happened to the money. After it became known, however, that these mortgages had not been paid and cancelled, respondent's family, friends, and associates raised enough money to pay the existing mortgage on one piece of property, and on the other the amount necessary to clear the title was paid by a title insurance company. From these facts the commissioner concluded that "respondent used the funds made available to him to pay off the two prior existing mortgages for other purposes and by so doing violated a trust placed in him as an attorney by a client".

(B) On November 9, 1962, Powell was charged in the Nineteenth Judicial District Court for the Parish of East Baton Rouge in a bill of information with the theft of $550.00, the property of Mrs. Alice Edwards. On March 16, 1963, he pleaded guilty to this charge and was sentenced to 10 years in the penitentiary. The sentence, however, was suspended and respondent placed on supervised probation upon full restitution's being made. Mrs. Edwards, who had been a client of the respondent, testified at the hearing that Powell as her attorney had settled her claim in a damage suit for $750.00. Of this amount he gave her $100.00 and told her he would pay her medical bill of $550.00. The bill was not paid until after the charge of theft was filed, and it is not clearly shown when, by whom, or from what funds the medical bill was paid.

(C) Powell was indebted to a friend, George R. Sharp, for a large sum. He reimbursed Sharp in the following manner: Powell, a man named Harris, and Harry Meng were the owners of a corporation known as Old Hickory Investments, Inc., which owned a 40-acre tract of land. Powell represented to his associate Meng, who trusted him completely, that Sharp wanted to buy the property and would pay $50,000.00 by the assumption of a $32,000.00 indebtedness against the property and by giving his personal note for the balance of $18,000.00, payable in one year. Pursuant to this representation a corporate resolution was adopted authorizing the sale, and the property was conveyed to Powell on his representation that Sharp wanted the matter handled in that way. On November 10, 1961, Powell transferred the property to Sharp by deed reciting that the consideration was $50,000.00, $18,000.00 paid in cash and $32,000.00 in the assumption of a mortgage. No portion of the cash consideration was paid by Sharp or received

by Powell or the corporation, for Powell's whole purpose in the transaction was to repay his indebtedness to Sharp. Under these circumstances the commissioner found that Powell by his misrepresentations and dishonesty caused the corporation a substantial monetary loss.

(D) Hamilton B. Prestridge, who had been represented for some years by the respondent, was interested in purchasing an automobile agency. Powell falsely represented to his client that he was able to negotiate on his behalf for the purchase of a Volkswagen agency, and in support of these false statements he submitted to his client what purported to be a true and correct copy of a dealer's acceptance of an offer by Prestridge to purchase the agency. This document was purportedly signed by Robert J. Williamson, president of Continental Auto Sales, a corporation which owned a Volkswagen dealership and of which Powell was an officer and legal counsel. As a result of these false representations the client Prestridge issued to Powell his personal checks totalling $8750.00 to purchase the agency, and these checks were deposited in Powell's account. After some time had elapsed and the dealership transaction had not been completed, Prestridge employed another attorney to investigate the matter. It was revealed in the investigation that neither Williamson nor any other officer or employee of Continental Auto Sales had been approached with regard to a sale of the dealership, and that Williamson had never signed the purported sales agreement to consummate which Prestridge had delivered money to Powell. Subsequently Powell made restitution of half of the amount he had received from Prestridge and then gave bad checks for the remainder. Full restitution, however, was eventually made by check drawn on a clients' account of Powell and another attorney with whom he was associated, which Powell had no right to use for this purpose.

(E) For a few years after his graduation from law school Powell practiced with another attorney in Baton Rouge, and this association continued until sometime in 1959. In July, 1961, he became associated with another lawyer. During both of these associations Powell withdrew from clients' accounts amounts alleged to total over $24,000.00, though the record does not disclose with certainty the exact amount of these withdrawals. These withdrawals were improperly made by checks cashed for his personal use.

Counsel for the absent respondent seeks to have us dismiss or stay this disbarment proceeding, basing his argument on the principle that the primary purpose of a disbarment proceeding is not punishment of the attorney but protection of the courts and the public. He points out that the respondent has failed to pay his dues to the Louisiana State Bar Association and be-

cause of this failure has been certified to this court as ineligible for the practice of law,[1] and he calls our attention to respondent's statement in his letter to the committee that he had not engaged in the practice of law since December, 1961, and did not intend to practice in the future. For these reasons counsel argues that this court under its plenary power could deny any future application Powell might make for reinstatement, and that this course would accomplish the primary purpose of disbarment proceedings, which is not to punish the attorney but to benefit the profession and protect society.

 This court will not stay or dismiss a disbarment proceeding solely on the ground that the member of the bar against whom the proceeding has been instituted has rendered himself ineligible to practice law in this state by deliberate and intentional failure to pay dues, for he still remains on the roll of attorneys filed in this court and

is the possessor of a certificate to practice law.

 It is true, as counsel states, that this court has recognized the primary purpose of a disbarment proceeding to be not punishment of the attorney but protection of the courts, the legal profession, and the public.[2] We agree that as long as respondent remains ineligible to practice law in this state, the public is protected, but the primary purpose of disbarment proceedings encompasses also the protection of the courts and the legal profession. Where the disbarment is sought on charges which, if proven true, would justify suspension or disbarment, it would be highly detrimental to the courts and the legal profession to stay or dismiss the proceedings solely because of ineligibility for non-payment of dues and thereby permit the name of the member of the bar to remain on the roll of attorneys filed in this court and permit him to continue to possess a valid certificate to practice law issued by this court. Not to

---

1. Article 5, Section 4, of the Articles of Incorporation of the Louisiana State Bar Association provides:

 "A member in default in payment of dues for thirty days, shall be regarded as delinquent, and shall be given written notice thereof by the Secretary-Treasurer. If the delinquent member fails to pay such dues within thirty days after such notice of delinquency, he shall cease to be a member in good standing, and the Secretary-Treasurer shall certify to the Supreme Court that the delinquent is thus ineligible to practice law.

 "Where a member has thus become ineligible, he shall be reinstated upon pay-

ment of the dues owed at the time he ceased to be a member in good standing, together with a penalty of Five Dollars ($5.00) and any additional dues that might be payable for the current year. Notice of the removal of his ineligibility shall be given to the Supreme Court." West's LSA–R.S. Vol. 21A, p. 127.

2. Louisiana State Bar Ass'n v. Jerome T. Powell, 248 La. 237, 178 So.2d 235; see also In re Novo, 200 La. 833, 9 So. 2d 201; In re Weber, 202 La. 1037, 13 So.2d 341.

proceed to a conclusion in such a case would have the effect of destroying public confidence and respect which the courts and the legal profession strive to deserve and to maintain.

The attorney for respondent calls our attention in brief to certain facts and circumstances which he contends would justify suspension of respondent for a definite period of time rather than disbarment. We do not think the circumstances on which counsel relies for mitigation warrant a suspension in this case. Respondent's misconduct was not an isolated instance but consisted of many acts over a period of approximately two years. It was proven that during this time he betrayed and abused the trust of his clients, used funds of his clients coming into his possession for his own personal benefit, misrepresented facts to his clients for his own personal gain, pleaded guilty to a criminal offense involving moral turpitude, obtained funds from his clients by misrepresentation and deceit and even went so far on one occasion as to use a forged document for this purpose.

Like the commissioner, this court is grateful to Mr. R. Emmett Kerrigan, an able and experienced member of the New Orleans bar, appointed by this court to represent the absent respondent. Mr. Kerrigan, under difficult circumstances and without any assistance from the respondent, devoted his time and legal ability to this task, and the respondent has been well and capably represented.

From all the facts of this case we have concluded that Powell's misconduct was of sufficient gravity to evidence a lack of moral fitness for the practice of law.

Accordingly it is ordered that the name of Harold E. Powell be stricken from the roll of attorneys and his license to practice law in Louisiana be, and it is hereby, cancelled. Respondent is to pay all costs of these proceedings.

195 So.2d 285