338 So.2d 1338 (1976)
LOUISIANA STATE BAR ASSOCIATION
v.
Henri LORIDANS.
No. 55433.
Supreme Court of Louisiana.
September 13, 1976.
Rehearing Denied November 5, 1976.
Dissenting Opinion November 17, 1976.
*1340 Henry A. Politz, Chairman, Shreveport (Recused), Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Leonard Fuhrer, Alexandria, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, Counsel, Louisiana State Bar Association, Committee on Professional Responsibility, for plaintiff-petitioner.
Donald R. Miller, Shreveport, for defendant-respondent.
CALOGERO, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Henri Loridans, a member of the bar of this State. The Committee's petition relies upon the authority of section 8 of article 15 of the Articles of Incorporation of the Louisiana State Bar Association, as effective September 1, 1971, and is based upon respondent's conviction in federal court for mail fraud and conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 371, 1341. This Court has original jurisdiction over these proceedings as provided in section 10 of article 7 of the Louisiana Constitution of 1921.[1]
On April 3, 1967, Henri Loridans, respondent herein, was indicted by the Grand Jury for the United States District Court for the Eastern District of Louisiana. This indictment contained multiple counts, charging respondent and others with mail fraud and conspiracy to commit mail fraud. On December 18, 1970, after a trial lasting almost two months, respondent and a number of his co-defendants were found guilty as charged. He was thereafter sentenced to serve three years imprisonment on each of the four counts for which he was convicted, the sentences to run concurrently.[2] Thereafter the United States Court of Appeal, Fifth Circuit affirmed the judgment of the district court. United States v. Perez et al., 489 F.2d 51 (5th Cir. 1974). Respondent's application for writs of certiorari was denied by the United States Supreme Court on June 10, 1974. 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974).
On October 11, 1974, a petition for disciplinary action against respondent was filed *1341 with this Court. In response to that petition, respondent filed various exceptions to the proceedings, which this Court ordered referred to the merits. Respondent then answered the petition by way of a general denial, affirmatively asserting, however, that he was innocent of the charges for which he stood convicted and giving notice that he intended to produce evidence of extenuating circumstances.[3] On October 14, 1975, a hearing was held before George Arceneaux, Jr., the Commissioner appointed by this Court to conduct the proceedings. Art. of Incorp., La. State Bar Assn., Art. 15, § 8(7)(b)(1971). At the hearing, the Committee introduced into evidence the entire record of the instant proceedings, including the original petition for disciplinary action, certified copies of the Judgment of Commitment of the United States District Court for the Eastern District of Louisiana, and photostatic copies of the opinion of the United States Court of Appeal, Fifth Circuit in the case of United States v. Perez, supra. At this point, respondent requested the introduction of the entire transcript of evidence before the United States District Court and of all motions and pleadings filed in that court subsequent to the conviction. The Commissioners overruled respondent's motion to introduce this additional material on the basis that under the Articles of Incorporation of the Louisiana State Bar Association, the Committee is only required to introduce "the certificate of the conviction of the respondent." Respondent objected to the Commissioner's ruling and proffered the evidence.
At the hearing, respondent testified on his own behalf and presented four character witnesses, as well as Alvin B. Evans, Jr., one of his codefendants in the federal mail fraud-conspiracy case. The Commissioner sustained the committee's objection to Mr. Evans' testimony, but nonetheless allowed the witness to testify under an offer of proof. That testimony was essentially to the effect that he had never heard Loridans discuss, or participate in a discussion relative to, the fraudulent aspects of the scheme which formed the basis of the convictions, and that he had overheard several of the principals state that the physicians and attorneys involved had been "fooled." In addition respondent proffered eleven additional witnesses who would have testified either that they had overheard conversations indicating that respondent did not have knowledge of the fraudulent scheme or would have offered information tending to negate respondent's guilt. This testimony was objected to by the committee on the grounds that under the provisions of article 15, section 8, paragraph 7(d) of the Articles of Incorporation of the Louisiana State Bar Association "respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted . . ."
On March 8, 1976, Commissioner Arceneaux filed his report with this Court, in which he concluded that respondent's conviction for mail fraud and conspiracy to commit mail fraud is final; that the offenses for which he was convicted are serious crimes; that evidence relating to respondent's lack of knowledge of any fraudulent scheme, although admitted under offer of proof, is not admissible and should be disregarded; and that although the introduction of a certificate of conviction is conclusive evidence of guilt, that the respondent may show that the crime is not one involving misconduct or moral turpitude. Based on these conclusions, as well as an examination of the crime itself, the Commissioner *1342 found that "the conduct of respondent warrants discipline" and noted that it is his "reluctant, but firm conviction that [respondent] be disbarred from the practice of law . . ." The Committee on Professional Responsibility filed its concurrence to the report of the Commissioner. The matter was then submitted to this Court for final determination of the appropriate disciplinary action to be taken, if any.
Respondent first contends that it was error for the committee to proceed in the instant case under article 15, section 8 of the Articles of Incorporation of the Louisiana State Bar Association, as amended and effective September 1, 1971, for a crime committed prior to its effective date. Respondent argues that as amended the penalty provisions for disbarment require a mandatory minimum of five years, that such penalty exceeds that in effect prior to the amendment,[4] and that the increased penalty is in the nature of a bill of attainder or an ex post facto law in violation of both the United States and Louisiana Constitutions.
We find no merit to this argument. As we stated in Louisiana State Bar Association v. Ponder, 263 La. 743, 269 So.2d 228 (1972), if an attorney's conviction became final after the September 1, 1971 effective date, the disciplinary action is properly instituted under the provisions as set forth in the 1971 restated articles of incorporation. Respondent's conviction became final twenty-five days after the United States Supreme Court denied his application for writ of certiorari. Rule 58 of the Rules of the Supreme Court of the United States; Cutrer v. Humble Oil & Refining Co., 228 F.Supp. 787 (E.D.La.1964), aff'd Stevens v. Humble Oil & Refining Co., 346 F.2d 43 (5th Cir. 1965), cert. denied 382 U.S. 978, 86 S.Ct. 546, 15 L.Ed.2d 468 (1966). See also Louisiana State Bar Association v. Ponder, supra. The United States Supreme Court denied respondent's writ application on June 10, 1974. Thus respondent's conviction became final well after the current Articles of Incorporation of the Louisiana State Bar Association became effective and the committee properly proceeded thereunder.
Secondly, respondent contends that the committee erred in not proceeding under article 15, section 8, paragraphs 1 through 6 of the Articles of Incorporation of the Louisiana State Bar Association. The rules applicable when an attorney has been convicted of a crime are set forth in article 15, section 8.[5] Paragraphs 1 through 6 provide *1343 that upon learning that an attorney has been convicted of a crime, the committee may secure the appropriate certificate of conviction; that the committee shall then make a determination whether the crime of which the attorney has been convicted is a serious crime; and that after making this determination, the committee shall file a written report with this Court, stating its findings and conclusions. If this Court concurs with an opinion by the committee that the crime is serious, the attorney may be suspended from the practice of law and the committee ordered to institute the necessary disciplinary proceedings.[6] However, these (latter) disciplinary proceedings may not be brought to a hearing until all appeals from the conviction have been exhausted, unless an earlier hearing date is requested by the respondent. Under the provision of paragraph 7, once the conviction has become final, the committee files a petition with this Court seeking disciplinary action; the court appoints a commissioner; and the hearing is conducted. This Court then makes its final determination with respect to disbarment.
In the instant case, the committee did not, prior to the filing of the petition for disciplinary action, and prior to the finality of the conviction, make a preliminary determination that the crime of which respondent was convicted was a serious crime, and did not "file a written report with the Supreme Court, setting forth its findings and conclusions," based on such a determination. Rather the committee waited until respondent's conviction was final, before initiating proceedings, and then under article 15, section 8, paragraph 7 of the Articles of Incorporation of the Louisiana State Bar Association.
Viewing the provisions of section 8 of article 15 in their entirety, it is clear that they call for an initial determination by the committee of the seriousness of the crime in the interim period after conviction but before finality of judgment by exhaustion of appeals. Such a preliminary determination allows for the suspension of an attorney during this time and thus affords better protection to the public and the courts. While the current Articles of Incorporation do provide for these preliminary steps, in *1344 the instant case we see no substantial violation of respondent's rights by the failure of the Committee to take them. If that procedure had been followed, respondent would possibly have been under suspension during the five to six year period between his conviction in federal court and the present determination by this Court with respect to respondent's disbarment. Instead he continued to practice law. Here the committee did not opt to proceed against respondent prior to the finality of his conviction. For whatever reasons they chose to wait, in our view their decision not to take any preliminary steps to discipline respondent does not give rise to any defense on his part to the initiation of the proceedings after his appeals have been exhausted and his conviction has become final.
In connection with the above argument, we additionally conclude that respondent's contention that the instant proceeding is barred by the running of a prescriptive period is without merit.
Respondent contends that the prescriptive periods set forth in articles 572 and 578 of the Louisiana Code of Criminal Procedure, which provide limitations on the institution of prosecution and the commencement of trial in criminal cases, should be applied to disciplinary actions based on an attorney's conviction of a crime and that the periods should run from the date of the alleged misconduct. The Louisiana State Bar Association has not stated in its Articles of Incorporation a specific prescriptive period applicable to the bringing of disciplinary actions, and we are cognizant of no statutory prescriptive period that should be applied in this situation. See Louisiana State Bar Association v. Theard, 222 La. 328, 62 So.2d 501 (1952). Under the current procedures, the preliminary steps are premised upon conviction of a crime and the actual petition and hearing follow finality of the conviction. In the instant case, as previously noted, respondent's conviction became final twenty-five days after the United States Supreme Court denied his application for writ of certiorari on June 10, 1974. The petition for disciplinary action was filed within four months, on October 11, 1974. Pretermitting the question of what prescriptive period, if any, is applicable to disciplinary proceedings, we conclude that the present action is not barred.
Having thus determined that a hearing was properly held in this matter, we are now confronted with the question of what evidence is admissible at the hearing and thus to be appropriately considered by this Court in the instant case. In this regard, article 15, section 8, paragraph 7(d) of the Articles of Incorporation of the Louisiana State Bar Association provides as follows:
"At the hearing based upon the respondent's conviction of a crime the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime." (Emphasis added)
In addition, article 15, section 8, paragraph 7(c) states that "the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted." These provisions were clearly designed to put an end to an examination of respondent's guilt or innocence of the crime of which he has already been convicted and to permit only the introduction of mitigating circumstances that are not inconsistent with that guilt.
In the instant case, respondent testified on his own behalf at the hearing and, as he did during his trial, maintained his innocence. In addition, he presented at the hearing the testimony of Alvin B. Evans, Jr., under an offer of proof, and indicated that additional witnesses would also testify that they had reason to believe that respondent had no knowledge of any fraudulent scheme with respect to mail fraud and conspiracy to commit mail fraud, the crimes for which he was found guilty.
One of the essential elements of mail fraud as set forth in 18 U.S.C. § 1341, is a conscious, knowing intent to defraud. *1345 United States v. Payne, 474 F.2d 603 (9th Cir. 1973); United States v. Koenig, 388 F.Supp. 670 (S.D.N.Y.1974). In addition, one of the essential elements of the crime of conspiracy to violate a criminal law is knowledge and intent. See United States v. Feola, 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975); United States v. Garafola, 471 F.2d 291 (6th Cir. 1972); United States v. Koenig, supra. As noted by the United States Court of Appeal, Fifth Circuit, in its opinion affirming respondent's conviction, United States v. Perez, supra, at 61, 62:
"A review of the record has convinced us that the evidence adduced, both direct and circumstantial was adequate to warrant the inference that all of the participants had entered into this concerted program. To conspire is to agreethe presence of an agreement is the primary requirement for the establishment of a conspiracy, the commission of an overt act in furtherance being attendant.
"* * *
"Here, there was direct, positive testimony, if credited, from which the jury could find that each of the defendants, appellants here, were participants in one overall conspiracy. With hardly any exception, the testimony squared with the common sense of the scheme."
To permit respondent to offer evidence at his hearing before the Committee on Professional Responsibility tending to show his lack of knowledge and/or intent would be to admit evidence "inconsistent with the essential elements of the crime for which he was convicted . . . ." In direct conflict with the terms of article 15, section 8, paragraph 7(d) of the Articles of Incorporation of the Louisiana State Bar Association. We therefore conclude that the testimony of Alvin D. Evans, Jr., the testimony of respondent, and the proffered testimony of the eleven additional witnesses, insofar as such testimony seeks to negate any knowledge or intent on the part of respondent, was inadmissible at the hearing and will be disregarded by this Court. To hold otherwise would require this Court to retry respondent despite the fact that he was convicted after trial by jury, and despite the fact that his conviction was affirmed on appeal. It would also be in contravention of the specific language of the Articles of Incorporation that "the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted."
The foregoing discussion is not intended to foreclose an inquiry into the facts surrounding the commission of the offense insofar as they reflect upon the character or quality of the criminal conduct or a respondent's degree of complicity therein. See Louisiana State Bar Association v. Edwards, 322 So.2d 123 (La.1975). It merely indicates that the reference to "mitigating circumstances" does not relate to mitigating circumstances with respect to respondent's guilt or innocence of the crime, or with respect to the essential elements of that crime, but rather relates to mitigating circumstances which appropriately bear upon "whether the crime warrants discipline, and if so, the extent thereof." Thus evidence of "mitigating circumstances not inconsistent with the essential elements of the crime" would include the character of the misconduct on which the conviction was based and, in appropriate cases, the degree of respondent's complicity, as well as evidence relative to the reputation of respondent, his post-conviction conduct, the regard in which he is held by members of the legal profession and the community in which he resides, family circumstances and the like.
The basic facts surrounding respondent's conviction for mail fraud and conspiracy to commit mail fraud were set forth by the United States Court of Appeal, Fifth Circuit, in its opinion United States v. Perez, supra, at 55-56, as follows:
". . . The Louisiana-wide getrich-quick scheme involved the staging of fraudulent automobile accidents for the purpose of creating false personal injury claims. These claims would be submitted to the insurance carriers for the respective vehicles involved in the wrecks with *1346 the aid and contrivance of certain physicians and lawyers.
As the scheme evolved, the participants even coined their own terminology which, though alien to the uninitiated, became known to all those who participated. This glossary of modern day crookedness was quite descriptive. Certain participants were known as "recruiters". The recruiters' function, not unnaturally, was to recruit others who assumed titles commensurate with their organizational function. There were the "hitters", whose function it was to drive the "hitter" vehicle in each collision which supposedly was to be liable for causing the accident. Then there was the "target" vehicles. The occupants of the "target" were known as the "driver" and the "riders". It was determined at the outset that pregnant women made exceptionally good riders as they could claim pregnancy related injuries which would be both hard to disprove and easily settleable with the insurance carriers. Throughout the scheme there was an effort made on the part of the participants to use vehicles and drivers which were covered by high limits of liability insurance.
According to a pre-arranged timetable, the "hitter" vehicle would strike the "target" vehicle either broadside or in the rear end. The occupants of the "target" vehiclethe driver and ridersand occasionally some of those in the "hitter" vehicle, feigning injuries, would be sent to a particular doctor and lawyer who would facilitate phony claims by creating a medical history for treatment of nonexistent injuries and making a demand on the appropriate insurance company.
The key to immediate financial gain in each staged collision was advances paid by the attorneys to the "riders" for whom allegedly false claims were being submitted. These advances were paid in the form either of cash payments or loans from local financial institutions, co-signed by the attorney handling the claim. Of the usual advance ranging from $250 to $500, part was retained by the rider-claimant with the rest being distributed among the organizers, recruites, and others who assisted with various aspects of staging the wreck. When the claim was ultimately settled with the insurance carrier, the proceeds would be applied to (i) repay the advancing attorney or in such cases, to liquidate the guaranteed bank loan and (ii) to pay the inflated doctor's bill, not infrequently, with kickbacks going to both the organizers and the participating attorneys in addition to their usual shares.
The feature of this case which brought it into federal court was that, in the course of asserting and negotiating for settlement the fraudulent claims of the voluntary victims, the United States mails were used. . ." (footnotes omitted)
The indictment returned by the federal grand jury contained thirteen counts against twenty-one persons, including physicians, attorneys and the non-professional participants. Fifteen of them were tried. Respondent was initially charged with five counts, one of which was dismissed by the trial court for insufficient evidence. He was convicted by the jury on the remaining counts as charged. One of the counts related to conspiracy to commit mail fraud and the other three to the substantive offense of mail fraud, all relative to a collision staged in Iowa, Louisiana on June 29, 1966. At trial the government produced evidence of four additional staged accidents in which respondent and another attorney represented the claimants, apparently for the purpose of showing knowledge and intent in connection with the conspiracy charge. There was also testimony by passengers who participated in the staged accidents tending to show respondent's knowing complicity in the scheme, as well as evidence showing that employment contracts securing his services and promissory notes securing advance payments were signed prior to the accidents.[7]
*1347 As indicated in our previous discussion, the sole issue to be determined by this Court in a disciplinary action based on conviction of a crime is whether "the crime warrants discipline, and if so, the extent thereof." Art. of Incorp., La. State Bar Assoc., Art. 15, § 8, para. 7(d) (1971). While the respondent is not, as previously noted, permitted to introduce evidence inconsistent with the essential elements of the crime or which goes to his guilt or innocence, he is allowed to show that the crime did not involve such misconduct or moral turpitude that he should be disbarred. No such showing was made by respondent. In addition, the mitigating circumstances which he properly presented to the court, i.e., that since the conviction he has led a good and useful life and that he has already suffered financially while raising a large family, do not detract from the fact that the conduct on which respondent's conviction was based is not only seriously criminal but also relates directly to a substantial abuse and misuse by respondent of his skills as an attorney. Thus in conclusion we agree with the findings of the Commissioner, concurred in by the Committee, that respondent has been convicted of a serious crime which reflects on his moral fitness to practice law and find that under the circumstances of this case disbarment is the appropriate disciplinary action.
For the reasons assigned, it is ordered, adjudged and decreed that Henri Loridans be and he is hereby disbarred from the practice of law in Louisiana on and after date of this decree. Respondent is to bear all costs of this proceeding.
DENNIS, J., dissents and assigns reasons.
TATE, J., recused for reasons stated in La. Bar Ass'n v. Shaheen, La., 338 So.2d 1347, this date rendered.
DENNIS, Justice (dissenting).
I respectfully dissent for the reasons assigned by me in Louisiana State Bar Association v. Shaheen, Jr., 338 So.2d 1347 (La. 1976), No. 55,432.
NOTES
[1] At the time the petition for disciplinary action was filed by the Louisiana State Bar Association on October 11, 1974, the 1921 Constitution was still in effect. The pertinent jurisdictional authority is now contained in section 5 of article 5 of the Louisiana Constitution of 1974.
[2] The sentence was later amended from imprisonment to active probation for three years.
[3] Subsequent to the filling of the answer, a supplemental petition to the earlier filed exception of prematurity was filed, alleging that the matter was premature because a motion for a new trial was pending before the federal district court. The motion was denied, but apparently is presently being considered by the United States Court of Appeal, Fifth Circuit. Before this Court respondent is not contending that his conviction is not final, but rather in brief is stating that he "agrees with the authorities cited by the Louisiana State Bar Association relative to the procedural finality of a conviction. . . ." He does argue, however, that the substance of his motion for a new trial "be considered by the Court as evidence of mitigation."
[4] Under the present provisions a mandatory minimum of five years must elapse following disbarment before the disbarred attorney may apply for reinstatement. Arts. of Incorp., La. State Bar Assn., Art. 15, § 12(a) (1971). The previous provision did not require a minimum period of time to so elapse. Art. of Incorp., La. State Bar Assn., Art. 15, § 12 (1971).
[5] Article 15, section 8 of the Articles of Incorporation of the Louisiana State Bar Association provides in full as follows:

(1) Upon learning that an attorney has been convicted of a crime, whether the conviction results from a plea of guilty or nolo contendere or a verdict after trial, the Committee on Professional Responsibility may secure a certificate of such conviction from the applicable Clerk of Court.
If the conviction is obtained in a Court of another state or a Federal Court, the Committee upon learning of the conviction, shall obtain two (2) copies of a certificate of conviction from the proper Court, and shall retain one (1) copy and may forward the other copy to the Supreme Court.
(2) The Committee shall then make a determination whether or not the crime of which the attorney has been convicted constitutes a serious crime. The term "serious crime" means a felony or any other crime, the necessary element of which as determined by the statute defining such crime, reflects upon the attorney's moral fitness to practice law.
It will be necessary for the Committee in determining whether or not the crime constitutes a "serious crime," to study the statute defining the crime, particularly if the crime involves the violation of a statute of the Federal Government or another state or jurisdiction.
(3) Upon completing its determination as to whether or not the crime constitutes a "serious crime," the Committee shall file a written report with the Supreme Court, setting forth its findings and conclusions.
(4) If the Supreme Court should concur with the opinion of the Committee that the crime of which the attorney has been convicted constitutes a serious crime, the Supreme Court may suspend the respondent from the practice of law and order the Committee to institute the necessary disciplinary proceedings, provided however, that the disciplinary proceedings so instituted will not, unless requested by the accused, be brought to a hearing until all appeals from the conviction are concluded.
(5) If the Committee in its report to the Supreme Court has concluded that the crime of which the attorney has been convicted is not a serious crime, or if the Supreme Court should determine independently that the crime is not a serious crime, the Supreme Court will refer the matter back to the Committee.
(6) An attorney will be reinstated immediately on the reversal of his conviction for a serious crime that has resulted in his suspension, but the reinstatement will not terminate any disciplinary proceedings then pending against the attorney.
(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:
(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime.
(8) Except as provided hereinabove in this Section, the procedure with reference to proceedings based on a conviction of a crime, shall be conducted in the same manner as in ordinary proceedings.
[6] As a matter of information, it is noted that in Louisiana State Bar Association v. Ehmig, 277 So.2d 137, 141 (La. 1973), this Court held that "[b]efore the Committee on Professional Responsibility can petition the Court for suspension of an attorney whose conviction is not final under Section 8 of Article XV, Articles of the Louisiana State Bar Association, it must hold a contradictory hearing and determine that the conviction involves a `serious crime.'"
[7] The facts are set out more fully in United States v. Perez, supra.