363 So.2d 667 (1978)
LOUISIANA STATE BAR ASSOCIATION
v.
Dudley A. PHILIPS, Jr.
No. 58505.
Supreme Court of Louisiana.
October 9, 1978.
Rehearing Denied November 9, 1978.[*]
Leonard Fuhrer, Alexandria, Chairman, Wood Brown, III, New Orleans, Sam J. D'Amico, Baton Rouge, Harold J. Lamy, New Orleans, Edgar H. Lancaster, Jr., Tallulah, John F. Pugh, Thibodaux, A. Russell Roberts, Metairie, John B. Scofield, Lake Charles, Thomas O. Collins, Jr., New Orleans, Executive Counsel, La. State Bar Assoc., Committee on Professional Responsibility, for petitioner.
Dudley A. Philips, Jr., in pro. per.
DIXON, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted this disciplinary proceeding against Dudley A. Philips, Jr., a member of the Louisiana Bar practicing in New Orleans. The Committee in its petition relies upon the authority of Article 15, § 8 of the Articles of Incorporation of Louisiana State Bar Association, as effective September 1, 1971, and this proceeding is based on respondent's conviction in Criminal District Court of Orleans Parish of theft of $88,945.30. This court has original jurisdiction over these proceedings as provided in Article V, § 5 of the Louisiana Constitution of 1974.
On October 29, 1975 respondent Dudley A. Philips, Jr. was charged by bill of information with theft of $88,945.30, in violation of R.S. 14:67. The money allegedly was taken from his client, a cab company. On June 29, 1976 respondent withdrew his plea of not guilty and entered a plea of guilty. Respondent was sentenced to two years at hard labor, the execution of sentence suspended, and he was placed on three years active probation. As a special condition respondent was ordered to make restitution of $25,000 to his client within two years of the date of sentencing. Later, the amount of restitution was amended to order respondent to pay $75.00 per month from October 1, 1978 to October 1, 1981.
On August 23, 1976 a motion and order for the suspension from the practice of law *668 was filed with this court and the order was signed September 14, 1976. On October 8, 1976 a petition for disciplinary action against respondent was filed. This court appointed Felicien Lozes, an attorney engaged in active practice of law for not less than ten years as Commissioner to take evidence and to report to the court his findings of fact and conclusions of law. On February 24, 1978 testimony and evidence were taken at a hearing before the appointed Commissioner and in his subsequent report, the Commissioner stated that while the offense of which the respondent was convicted was serious enough to warrant whatever discipline this court felt appropriate including disbarment, the Commissioner recommended that the respondent be suspended from the practice of law for at least two years. The Committee on Professional Responsibility concurred with the Commissioner. Also concurring with the Commissioner's findings, the respondent requested that this court accept the Commissioner's recommendation for disciplinary action and that he be given credit for the time suspended beginning from September 14, 1976.
In testimony before the Commissioner, respondent stated that while practicing law in New Orleans, he was employed for some fourteen years by a local cab company. During the last three or four years of employment in about ten percent of the cases, respondent would receive settlement checks from his client based on recommendations of all parties made at the pretrial conference. Respondent would then endorse the checks made payable to the injured party and his attorney and deposit the money in his own account. Respondent would make the various attorneys wait for a month or two months and then make a settlement for less money than the originally agreed on pretrial amount. The excess accumulated to approximately $90,000 in three or four years.
Respondent maintained an account of these funds in a file cabinet drawer but kept no running calculation of the amount of money "saved." Nor did he report to the client the amount of the difference. Respondent commingled the money with his general office account and paid business and personal expenses out of the money. When the client's board of directors changed and a new insurance policy with no deductible for personal injury claims was imminent, respondent decided that the insurance company would want their own attorneys to handle the cab company's claimants. Respondent offered to make an accounting of the funds, but an auditing firm was hired. Respondent had begun making restitution when the bill of information was filed against him. Subsequently, respondent made full restitution except for the $25,000 special condition of his sentence, which was later adjusted by the trial judge.
Respondent also testified at the hearing that charges were brought against him in federal court for making a fraudulent financial statement to a federally insured institution. One charge was dropped and the respondent plead guilty to the other charge. He testified that in 1977 Judge Gordon (of the Eastern District) deferred sentencing on the second charge because respondent had made restitution to the banks from which he had borrowed the money.
Respondent disputes none of the facts but contends that there are mitigating circumstances: restitution of part of the money even before criminal charges were brought against him; final restitution of all the money; respondent's long period of active law practice, and his suspension of two years.
An action against members of Louisiana Bar convicted of a felony is governed by § 8 of Article XV of the Articles of Incorporation of Louisiana State Bar Association and in particular subsections 7(a) through 7(d).[1] The sole issue before this *669 court in a disciplinary proceeding based on a conviction for a crime is whether the crime warrants discipline and, if so, the extent thereof. Louisiana State Bar Association v. Hennigan, 340 So.2d 264 (La. 1976), appeal dismissed 430 U.S. 925, 97 S.Ct. 1540, 51 L.Ed.2d 769 (1976); Louisiana State Bar Association v. Loridans, 338 So.2d 1338 (La.1976).
The respondent plead guilty to felony theft of $88,945.30 in violation of R.S. 14:67. This court has held that such a violation is one of moral turpitude. Louisiana State Bar Association v. Bearden, 258 La. 983, 249 So.2d 103, 104 (1971); Louisiana State Bar Association v. Powell, 250 La. 313, 195 So.2d 280 (1967).
Disciplinary Rule 9-102[2] provides the legal profession with the proper method of preserving identity of funds and property of a client. At the hearing before the Commissioner, respondent testified that he commingled and used his client's funds for his own business and personal expenses. The Commissioner found that respondent had violated Disciplinary Rule 9-102, and respondent accepted the Commissioner's findings of fact.
It is not disputed that the crime of felony theft of $88,945.30 of client's funds perpetrated in direct connection with respondent's law practice is a serious crime, and both the Commissioner and petitioner concluded that the crime warrants discipline. The Commissioner recommended that the respondent be suspended from practice of law for at least two years, the petitioner recommended that he be suspended for two years in addition to the two year suspension already served, and the respondent requested that this court consider his suspension for the past two years as adequate discipline. We are not inclined to approve any of these recommendations. In our opinion, the record requires disbarment to protect the courts, the legal profession and the public.
This court has disbarred attorneys who are convicted of a felony. Louisiana State Bar Association v. Hamilton, 343 So.2d 985 (La.1977); Louisiana State Bar Association v. Hennigan, supra; Louisiana State Bar Association v. Shaheen, 338 So.2d 1347 (La. 1976); Louisiana State Bar Association v. Loridans, supra.
*670 We noted in Louisiana State Bar Association v. Selenberg, 270 So.2d 848 (La.1972), cert. den. 414 U.S. 1021, 94 S.Ct. 443, 38 L.Ed.2d 312 (1973), that misuse of client's funds represents the gravest form of professional misconduct. It strikes at the heart of public confidence in the legal profession and warrants disbarment. See also, Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.1975). Refusing to follow the Commissioner's recommendation in Louisiana State Bar Association v. Haylon, 250 La. 651, 198 So.2d 391 (1967), this court reasoned that the misappropriation by an attorney of funds collected for his client is such a serious breach of trust that it would be contrary to public interest to allow the offender to continue to practice law. High standards of honesty have been erected for those engaged in the legal profession and all members of the profession are required to take an oath to uphold these ideals of exemplary conduct upon their admission to the Louisiana Bar. "Hence, the violator of the trust of his clients must expect disbarment." Haylon, supra, at 657, 198 So.2d at 392. In Haylon we found that suspension of the offender as recommended by the Commissioner would not protect the public and disbarment was the only appropriate action.
In the instant proceeding the evidence adduced at the hearing indicates an obvious disregard by the respondent of established ethical standards. The succession of acts of respondent over three to four years and the total amount taken indicates the extent and seriousness of the respondent's ethical misconduct; respondent did not commit a single, isolated act, but he continued a pattern over three or four years of spurious settlements and commingling. This continuing pattern is sufficiently grave to evidence a lack of moral fitness for the practice of law and warrants disbarment. Louisiana State Bar Association v. Gremillion, Jr., 320 So.2d 171 (La.1975); Louisiana State Bar Association v. Powell, supra; Louisiana State Bar Association v. Klein, 253 La. 603, 218 So.2d 610 (1969).
We note that there are some mitigating circumstances in the instant proceeding. Restitution is a mitigating factor, but restitution does not in all circumstances obviate the need for disciplinary action. Weysham, supra, at 338; Klein, supra, 253 La. at 607, 218 So.2d 610. The respondent only began restitution after a new board of directors took control of the cab company, and after it became imminent that the insurance company's attorneys would take over the injury claims against the cab company and that there would be an audit. Respondent was using these funds for his business and personal expenses and had a shortage that he could not make up when the audit occurred and when the bill of information was filed. Although he admitted at the hearing that he had "badly handled" his client's money, nowhere in the hearing transcript did the respondent express any regret over his continued pattern of spurious settlements that harmed both the injured claimants and the attorneys representing them.
Respondent contends another mitigating circumstance is his long period of law practice, over thirty years, in which he always conducted himself properly, but respondent's prior fidelity does not preclude disbarment. Selenberg, supra, at 849. Respondent also contends that two years suspension should be considered as mitigating circumstances, but in Haylon, supra, 250 La., at 657, 198 So.2d 391, this court found disbarment, not suspension, was the only appropriate action for misappropriation by an attorney of funds collected for his client. In Haylon, the attorney misappropriated $2742.00 in a single, isolated act and the Commissioner recommended suspension for four years. In refusing to follow the Commissioner's recommendation, we stated: "Suspension does not vouchsafe the protection to which the public is entitled." Haylon, supra, at 657, 198 So.2d at 392.
For the reasons assigned, it is ordered, adjudged and decreed that the name of Dudley A. Philips, Jr., respondent herein, be stricken from the roll of attorneys and his *671 license to practice law in Louisiana be revoked and canceled.
SUMMERS, J., concurs.
NOTES
[*] Dennis, J., would grant a rehearing.
[1] "(7) After the conviction has become final, that is, all appeals have been concluded or exhausted, the procedure shall be as follows:

(a) The Committee will file a petition in the Supreme Court seeking disbarment or any other remedy that the Committee deems appropriate, and the petition will be served upon the respondent in the same manner as in ordinary proceedings.
(b) When issue is joined by answer by the respondent, a Commissioner will be appointed by the Supreme Court to represent the Court in the same manner as in ordinary proceedings.
(c) At the hearing before the Commissioner, the certificate of the conviction of the respondent shall be conclusive evidence of his guilt of the crime for which he has been convicted.
(d) At the hearing based upon a respondent's conviction of a crime, the sole issue to be determined shall be whether the crime warrants discipline, and if so, the extent thereof. At the hearing the respondent may offer evidence only of mitigating circumstances not inconsistent with the essential elements of the crime for which he was convicted as determined by the statute defining the crime."
[2] "DR 9-102. Preserving Identity of Funds and Property of a Client

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."