449 So.2d 1011 (1984)
LOUISIANA STATE BAR ASSOCIATION
v.
Vincent WILKINS, Jr.
No. 82-B-2739.
Supreme Court of Louisiana.
January 16, 1984.
On Rehearing May 4, 1984.
Rehearing Denied May 25, 1984.
Thomas O. Collins, Jr., Richard A. Deas, Wood Brown, III, New Orleans, Robert J. Boudreau, Lake Charles, Sam J. D'Amico, Baton Rouge, Carrick R. Inabnett, Monroe, Harold J. Lamy, New Orleans, Alfred S. Landry, New Iberia, Philippi P. St. Peé, New Orleans, Roland J. Achee, Shreveport, Gerard F. Thomas, Natchitoches, for relator.
Louis O. Unglesby, Baton Rouge, for respondent.
CALOGERO, Justice.
The Louisiana State Bar Association, appearing through its Committee on Professional Responsibility, instituted this disbarment proceeding against Vincent Wilkins, Jr., by Petition for Disciplinary Action filed on November 16, 1982. The Petition incorporated four specifications of misconduct relative to two separate transactions, each involving a different client. The Commissioner appointed by this Court concluded that the charges of misconduct were supported by the record. He recommended disbarment. The Committee concurs in the Commissioner's findings and in his recommendation.
The Commissioner had reported the following as his findings of fact. In September of 1980, respondent Wilkins received a check in the amount of $2,622.31, issued by Aetna Insurance Company and payable to "James A. Zachary through his attorney, Vincent Wilkins, Jr." The check, which was to cover the cost of property damage to Zachary's automobile, was endorsed by Zachary and given to Wilkins. On September 29, 1980, Wilkins cashed the check at the bank where he maintained several checking accounts. On October 9, 1980, Wilkins was asked by Zachary to pay Miller-Terrell Buick the $2,622.31, so that Zachary might receive his automobile from *1012 the car dealership which had just completed repairs on the vehicle. Wilkins issued a check to Miller-Terrel Buick in the amount of $2,622.31, and Zachary got his car. The check was later returned for lack of sufficient funds. This NSF check prompted a lawsuit by the dealership against respondent Wilkins, and a default judgment in favor of the dealership. The judgment was eventually satisfied by means of a garnishment of respondent's salary as a public defender. Based on the above facts, which were supported by competent evidence, the Commissioner concluded that respondent was guilty of violating Code of Professional Responsibility Rule 9-102.[1]
The second transaction involved Wilkins' receipt of a check in the amount of $1,902.93, a check which was issued in satisfaction of a judgment obtained by Wilkins on behalf of a client, one Joseph Broussard. This check was deposited into one of respondent's checking accounts on May 29, 1980. At the time the check was deposited the account was overdrawn by $1,607.06. Respondent had not, by the time of the Commissioner's hearing of June 1, 1983, made any payments to the client from the proceeds of the $1,902.93 check. In defense of this charge of commingling and converting client funds to his own use, respondent offered into evidence a letter allegedly written to Broussard on June 6, 1980. The letter sets forth an itemization of services and fees with respect to respondent's representation of Broussard in the automobile accident litigation which resulted in the $1,902.93 judgment, as well as for other services allegedly rendered by respondent to Broussard. According to this accounting, Broussard, overall, was indebted to respondent in the net sum of $61.48. Based on discrepancies in respondent's testimony at various Committee hearings, as well as documentary evidence and testimony by Broussard, the Commissioner determined that the letter written on June 6, 1980, was a fabrication and did not represent a proper accounting of funds received by respondent on behalf of his client. The Commissioner then concluded that respondent was guilty of violating Rules 9-102(B) and 1-102(A)(4)[2] of the Code of Professional Responsibility in connection with his representation of Mr. Broussard.
Respondent disputes none of the facts but contends that there are mitigating circumstances. He argues that, insofar as are concerned the charges arising out of the Zachary incident, the client lost nothing himself. Rather, the NSF check was no *1013 more than a "business matter" between respondent and Miller-Terrel Buick. Concerning the charges arising from the Broussard matter, respondent claims that the amount of money due the client from the $1,902.93 check was in actuality only $350.00[3]. He admits having converted this $350.00 to his own use. However, he contends that because the amount of money owed Broussard is small, the penalty of disbarment would be far too severe. A final mitigating factor suggested by respondent is his twelve years of employment with the Baton Rouge Public Defender's office. In connection with this, respondent has filed many affidavits executed by attorneys and judges in the Baton Rouge area. These affidavits would establish respondent's good character and reputation in the legal community where he practices.[4]
This Court has held that misuse of a client's funds by an attorney may, and usually will, result in disbarment. Louisiana State Bar Association v. Armagnac, 424 So.2d 996 (La.1982); Louisiana State Bar Association v. Phillips, 363 So.2d 667 (La.1978); Louisiana State Bar Association v. Weysham, 307 So.2d 336 (La.1975); Louisiana State Bar Association v. Selenberg, 270 So.2d 848 (La.1972); Louisiana State Bar Association v. Haylon, 250 La. 651, 198 So.2d 391 (1967). Respondent argues that disbarment would be too severe in light of the mitigating circumstances. We disagree and have decided that the mitigating circumstances are not sufficient to warrant a lesser penalty than disbarment.
In connection with the Zachary incident, while it may be true that the client was not financially harmed, ultimatelythe Buick dealership decided to pursue collection of the money by means of a suit against respondentthe fact remains that respondent did commingle and convert to his own use funds due his client. Insofar as the charges arising from the Broussard matter, the record is devoid of any evidence that the client has received either a proper accounting or restitution from the proceeds of the $1,902.93 settlement check. Moreover, there is evidence in the record to support the finding of the commissioner that, in connection with the Broussard incident, respondent engaged in "dishonest conduct, fraud, deceit and misrepresentation in an effort to conceal" the misuse of his client's funds.
Although we have taken note of the attestations of respondent's capability in his role as assistant public defender we have concluded that under the circumstances of this case, as in most of the commingling cases we have decided, disbarment is the appropriate disciplinary sanction.
For the reasons assigned, it is ordered, adjudged and decreed that the name of Vincent Wilkins, Jr. be stricken from the Roll of Attorneys and that his license to practice law in the State of Louisiana is hereby cancelled.
WATSON, J., dissents, being of the opinion that a suspension would be appropriate.

ON REHEARING
PER CURIAM.
We granted a rehearing in this matter to reconsider the penalty imposed upon respondent *1014 Vincent Wilkins, Jr. After considering other cases involving similar circumstances, we believe that a penalty of disbarment in this case is too severe a sanction. Rather, we find that a suspension from the practice of law for a period of three years is the appropriate disciplinary action in this matter.

DECREE
Accordingly, for the reasons assigned, it is ordered that Vincent Wilkins, Jr. be suspended from the practice of law in the State of Louisiana for a period of three years. All costs of these proceedings are cast against respondent.
NOTES
[1] Disciplinary Rule 9-102 of the Code of Professional Responsibility provides:

(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or other properties in the possession of the lawyer which the client is entitled to receive."
[2] Disciplinary Rule 1-102 of the Code of Professional Responsibility provides:

(A) A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law.
[3] The Commissioner did not determine the exact amount of money owed to Broussard; it is not all clear, however, that Broussard was due only $350.00 out of the $1,902.93 check.
[4] We have taken note of the fact that the Commissioner, prior to rendering his report and recommendation, did not have the benefit of the numerous supportive affidavits. Respondent had requested that this Court remand the matter to the Committee and the Commissioner so they might take into account, in recommending a disciplinary sanction, the evidence relating to respondent's good character. This Court can take cognizance of the proffered mitigating affidavits and obviate further delay. It was for this reason that prior to oral argument this Court denied respondent's motion to remand.

Subsequent to the filing of the supportive affidavits by respondent the Committee filed with this Court a memorandum in which they expressed opposition to any disciplinary action short of disbarment. The Committee's contention is that after his conduct was discovered respondent engaged in fraudulent behavior in an attempt to deceive the Committee, and that the two commingling incidents were serious violations of the Code of Professional Responsibility.